## Ditch v. Yorktowne Mutual Insurance Company

*John R. Ferman,* for plaintiffs.
*Nevin Stetler,* for defendant.

GREINER, *P.J.,* December 23, 1983 — Both plaintiffs and defendant move for summary judgment on uncontradicted facts relating to plaintiffs' claim under their homeowners' policy with defendant because of partial destruction of their residence by fire. The sole legal issue is the interpretation and application of the loss-settlement provisions on page 7, paragraph 3c of the policy.

### FACTS

1. Plaintiffs, husband and wife, are owners of a property known and numbered as 504 Rock Street, Ridgway, Elk County, Pa.

2. Defendant issued a homeowners' policy, Number HO92958 to plaintiffs for insuring the property which they own and in which they live. The effective date of the insurance policy was March 25, 1981, through March 25, 1984.

3. The insurance policy was in full force and effect on November 17, 1982, when the property was partially damaged by fire.

4. The policy specifically provides that plaintiffs must insure the dwelling for no less than 80 percent

of its replacement cost, which clause is referred to as a "co-insurance clause."

5. The replacement of the property insured with equivalent construction and use on the same premises is $63,261.

6. The amount of insurance placed upon the premises was $25,000 as shown on the insurance policy.

7. Plaintiffs did incur incidental expenses in the amount of $1,551.89.

8. The cost of repairing the damage caused by the fire on November 17, 1982, is $10,915.59.

9. Defendant offered to pay to plaintiffs the sum of $1,551.89 for incidental expenses relating to the fire.

10. Maintaining that plaintiffs had under insured the property by failing to carry insurance in the amount of $50,608.80, 80 percent of the replacement cost as required by the policy, at the close of pleadings, defendant moves the court for summary judgment in the sum of $6,944.19, being $1,551.89 for incidental expenses and $5,393.30, the latter being 49.4 percent of the agreed repair costs of $10,915.59.

11. Plaintiffs, at the close of pleadings, moved the court for summary judgment in the sum of $12,467.48, being $1,551.89 incidental loss, and the total amount of $10,915.59 for the full cost of repairs.

## DISCUSSION

The policy provides in paragraph 3c(2) on page 7:

"If at the time of the loss the amount of insurance in this policy on the damaged building is less than eighty percent of the full replacement cost of the building immediately prior to the loss, we will pay the larger of the following amounts, but not exceed-

ing the limit of liability under this policy applying to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace; without deduction for depreciation, of that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80 percent of the replacement cost of the building."

Plaintiffs assert that the "full replacement cost of the building immediately prior to the loss" is not limited to replacement by new construction and that the full replacement cost of their building, 504 Rock Street, Borough of Ridgway, Elk County, Pa., is less than $30,000 ($31,250 being the total full replacement cost considering $25,000 to be 80 percent) if they are allowed to replace their property by purchasing an identical property. In support of their position plaintiffs attached to their complaint as Exhibit D a list of comparable properties transferred during the period of January 1980–May 1982, ranging in sale price of $14,000–$29,000. These included premises at 524 Rock Street, sold for $14,000, 336 Rock Street, sold for $23,000, and 332 Rock Street, sold for $17,500, all within two years of the date of the loss in question. Plaintiffs also rely upon the general rule of construction that any ambiguities in the policy must be resolved in favor of the policy holder, defendant being the author of its terms. To the contrary, defendant urges upon the court the construction of the policy language most beneficial to defendant but least beneficial to plaintiffs.

The subject property as well as the aforementioned three properties on Rock Street present values as could fairly be contemplated by plaintiffs

when setting the amount of insurance to be purchased on their premises. The property at 524 Rock Street, Ridgway, Pa., is very near the subject premises and is identical in construction. Referring to the 524 Rock Street sale from Johnson to Carson in 1981 for the sum of $14,000 plaintiffs argue that to accept defendant's position it would then have been necessary for Carson, at the time of purchase or immediately thereafter, to insure the property as to the building above the ground only for in excess of $63,000. Plaintiffs further contend that what this really means is that defendant wishes to collect insurance premiums on $63,000 on the premises in question, only worth $14,000 including land and outbuildings; that defendant's interpretation is merely a device to collect premiums in excess of those justified by the facts; that defendant suggests an interpretation that could not have possibly been in the contemplation of plaintiffs at the time plaintiffs purchased the premises or purchased the insurance in question; that defendant would impose upon plaintiffs the duty of day-to-day reappraisal of plaintiffs' home as to the cost of rebuilding with new materials a premises constructed around the turn of the last century when plaintiffs could not intend to rebuild a new home, and the penalty defendant wished to impose upon plaintiffs is that plaintiffs must bear a greater risk than defendant in the event of any partial loss, the cost of which is less than the policy limits.

We find plaintiffs' argument in support of their position very persuasive, and therefore further detailed review follows. Plaintiffs reason that:

Insurance is simply the risk business. It is a regulated industry in the Commonwealth of Pennsylvania. If defendant's interpretation is accepted then defendant has succeeded in raising its markets by

as much as four times the value of what the market truly is. What was defendant's risk in this case? If the property is properly insured defendant pays the *smallest* of one of three amounts. First, defendant will pay nothing in excess of the limit of liability under the policy. In other words, and using round figures throughout, if plaintiffs insured the premises for $50,000 and the full replacement costs without deduction for depreciation was $63,000, defendant would be liable for $50,000 if: (1) The replacement cost of that part of the building damaged for equivalent construction and use on the same premises is $50,000 or more; and (2) Plaintiffs actually and necessarily spent $50,000 or more to repair or replace the damaged building. (See policy, page 7, paragraph 3c(1)).

Policy page 2, paragraph 3c(4) provides:

"When the cost to repair or replace the damage is more than $1000 or more than 5 percent of the amount of insurance in this policy on the building, which ever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement in completed."

Referring to the above provision, plaintiffs' argument continues: if plaintiffs' building were totally destroyed by fire and if plaintiffs were properly insured, the only way plaintiffs could collect on their policy would be to invest in rebuilding an amount $1,000 more than plaintiffs paid for their house, which according to the deed to them from William A. Yonker, et ux, dated January 23, 1948, recorded January 28, 1948, at the Elk County Recorder of Deeds' Office in Volume 109, Page 443, was $6,000. At that point in time, if plaintiffs did rebuild, plaintiffs would have invested $25,000 in their property and the highest value of any property on Rock Street has sold for in the last two years is $23,000.

The policy, page 7, paragraph 3c(5) provides:

"You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis."

Thus if plaintiffs are unwilling to make such an investment, then applying paragraph 3c(5), plaintiffs could make a claim for loss or damage to the building on an actual cash-value basis, which plaintiffs believe to mean market value in the context of this particular policy. In Ballentine's Law Dictionary, Third Edition (1969), "actual cash value" is defined as "the price in cash obtainable in a fair market. The fair cash value. Birmingham Fire Ins. Co. v. Pulver, 126 Ill.329, 18 N.E. 804."

Although both counsel generally submitted the issue to the court as one of first impression, plaintiffs' counsel directed our attention to Reese v. Northern Insurance Company of New York, 207 Pa.Super. 19, 215 A.2d 266 (1965), which had verbatim policy provisions at issue. In that case, the Superior Court held that the replacement-cost provisions of the policy in effect at the time of the loss can be utilized without actual replacement or rebuilding. There, the policy limits were $15,000, the replacement costs of the damaged buildings were $13,000, and the actual cash value as depreciated was $9,000. The insureds did not replace or repair the building insured, and the court held that the insureds were entitled to utilize the replacement-cost provisions of the policy without actually rebuilding, and accordingly, the insureds were entitled to $13,000.

Reese also contains significant dicta where the policy contains provisions mandating replacement,

referring to such a provision in another case cited, the Reese court stated:

"That clause expressly requires the insured to replace and he is entitled to recover replacement value. Had such a clause been included in the present policy, there would be some justification for defendant's contention, but such was not the case.

*"It is our holding that the insured is entitled to utilize the replacement-cost provisions of the policy without actually rebuilding."* (Emphasis added.)

Referring to paragraph 3c(4) supra, plaintiffs assert that defendant would not have paid, in the event of a total loss, the total face value of the insurance policy, $25,000, because the market value of three similar properties was between $14,000 and $23,000, unless plaintiffs actually rebuilt, which is economically unfeasible, because plaintiffs would have $25,000 of their own funds into a property they could sell immediately after rebuilding for possibly up to $23,000.

Plaintiffs further contend that although the replacement costs utilizing new materials on their existing site would be $63,000, they could replace the insured building by buying the house next door and moving it onto their site, and the cost of the replacement building would be less than $25,000.

Plaintiffs also make an analogy between houses and cars. To replace a 1980 Chevrolet Citation by rebuilding with new parts, according to General Motors Crash Estimating Guide, June 1983, the cost would be in excess of $50,000. The market value of the vehicle is approximately $3,000. Neither the insured nor the insurer could reasonably intend to replace a $3,000 car for $50,000, with the ability of the insured to sell the same for $3,000. They claim the same to be true in the instant case. Plaintiffs purchased their land and buildings for $6,000

in 1948 and during the intervening period until the effective date of the policy, March 25, 1981, increased their fire insurance coverage to $25,000. In the event the building is totally destroyed by fire, neither the insured nor the insurer reasonably anticipate paying $63,000 simply to replace the building, and plaintiffs assert that the operation of the policy effectively precludes such a possibility. They further assert that neither of the parties reasonably anticipated a replacement value for their premises at 504 Rock Street in the amount of $63,000.

Plaintiffs thus conclude defendant's interpretation that replacement can occur only through rebuilding is unreasonable and should not be in any case applied; that plaintiffs' interpretation is reasonable under the policy language, and in any event, therefore should be applied; and that it is unreasonable for an insurance carrier to demand premiums based on a value several times that of the market value of the insured property.

Contrary, defendant relies upon the enforceability of the "co-insurance" clause in Pennsylvania. It is noteworthy that it argues that "'co-insurance' means a relative division of the risk between the insurer and the insured dependent upon the relative amount of the policy and the total amount of the risk insured thereby. 'Co-insurance clauses' in substance require the insured to maintain insurance on the property covered by the policy in a certain amount or percentage of the total risk, and stipulate that upon his failure to do so, the insured shall be a co-insurer and bear his proportionate part of the loss. In short, such clauses are designed to compel the insured as a self-insurer or otherwise to carry insurance on the risk in an amount equal to the percentage of its value fixed by the particular clause. 44 Am.Jur. 2d, p. 505-506. 'Co-insurance' was

deemed valid and permissible under the Common Law and continues to be valid and permissible unless there has been a statute invalidating the use of 'co-insurance clauses.' 44 Am.Jur. 2d, p. 506. There are no statutes in Pennsylvania invalidating 'co-insurance.' "

Defendant's position is faulted by its own definition of co-insurance, as in the instant case it insists that full replacement cost is limited to replacement by new construction, an astronomical amount not contemplated by either the insurer or the insured, and being ridiculous as compared to the amount necessary to restore the damage incurred. In short, the defendant is not assuming its "relative division of the risk between the insurer and the insured." The cases it cites in support of approval of co-insurance clauses in Pennsylvania are factually distinguishable and inapposite: Farber v. Perkiomen Mutual Insurance Company, 370 Pa. 480, 88 A.2d 776 (1952); Miller v. Home Insurance Company, 108 Pa.Super. 278, 164 A.2d 819 (1933); Jones v. Protection Mutual Fire Insurance Company, 93 Fed.Supp. 505 Aff'd. by 3d Cir.Ct.Appeals in 192 Fed. 2d 1018.

Defendant relies upon the meaning of "full replacement cost" as set forth throughout paragraph 3, page 7 of the policy, and more particularly paragraph 3c(3) as follows:

"In determining the amount of insurance required to equal eighty percent of the full replacement cost of the building immediately prior to the loss, you shall disregard the value of excavations, foundations, piers and other supports which are below the undersurface of the lowest basement floor or, where there is no basement, which are below the surface of the ground inside the foundation walls, and underground flues, pipes, wiring and drains."

Defendant goes to great lengths to distinguish various phrases such as "actual cash value," "market value," and "fair market value" as interpreted by our courts involving issues not presently before us. Fedas v. Insurance Company of the State of Pennsylvania, 300 Pa. 555, (1930); Farber v. Perkiomen Mutual Insurance Company, 370 Pa. 480, 88 A.2d 776 (1952). They are not dispositive of the issue before us.

We are concerned only with the terms of the policy as written by defendant and applied to the facts of the instant case. Reese, supra, is applicable and controlling. It held that any ambiguity in the terms of a policy must be construed against the insurance company in order not to defeat, without plain necessity, the loss insured against, and that where the provisions of an insurance policy are reasonably susceptible to two interpretations it is to be construed in favor of the insured. We are compelled to concur in plaintiffs' conclusion that defendant's interpretation that replacement can occur only through rebuilding is unreasonable and should not be in any case applied, and that plaintiffs' interpretation is reasonable under the policy language, and in any event, should be allowed. It is unreasonable for an insurance carrier to demand premiums based on a value several times that of the market value of the insured property.

We therefore make the following

## ORDER OF COURT

Now, December 23, 1983, defendant's motion for summary judgment in favor of defendant in the sum of $6,944.19 is denied and dismissed, and plaintiffs' motion for summary judgment in favor of plaintiffs in the amount of $12,467.48 is granted,

and the prothonotary is directed to enter judgment in favor of plaintiffs and against defendant in the sum of $12,467.48.