## Farber *v.* Perkiomen Mutual Insurance Company, Appellant.

Argued April 15, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Douglass D. Storey,* with him *Paul A. Koontz* and *Storey & Bailey,* for appellants.

*Stanley G. Stroup,* with him *John A. Minnich,* for appellee.

OPINION BY MR. JUSTICE JONES, May 26, 1952:

These appeals are from judgments for the plaintiff against the defendant companies, respectively, in separate actions on policies of fire insurance issued by the defendants to the plaintiff. Both appeals raise the same question of law under identical facts and will, therefore, be disposed of together.

The plaintiff, being the owner of a three-story building in Hyndman, Pa., insured his interest therein with the defendant insurance companies against loss by fire under similar policies, each for one year and "to the extent of the actual cash value of the property at the time of loss" but "not exceeding Five Thousand ($5,-000) Dollars." Both policies contained the following clause,—"Co-Insurance Clause: In consideration of the reduced rate and (or) form under which this policy is written, it is expressly stipulated and made a condition of this contract that in the event of loss this company shall be liable for no greater proportion thereof than the amount hereby insured bears to 80% of the actual cash value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

During the term of the policies, the building was damaged by fire which caused a partial loss. The figures hereinafter used were stipulated by counsel at trial and are not in dispute. The reproduction cost new of the building immediately before the fire was $39,435.83. Because of the building's age and condition, it had already suffered a depreciation of 60%

which gave it an "actual cash value" of $15,774.34. Accordingly, it was incumbent on the plaintiff under the co-insurance clauses of the policies to carry insurance of a total amount of $12,619.46, being 80% of $15,-744.34, the actual cash value of the property immediately before the fire. If the plaintiff carried less than the amount of insurance so required, then in case of damage by fire, he would be subjected to a diminution of loss proportional to the amount that the insurance actually carried was less than the amount required to be carried according to the co-insurance clauses. The reproduction cost new of the labor and materials required to repair the damage done by the fire in order to restore the building to its prior use was $17,225.44.

The plaintiff claims that the amount of his loss against which he was insured was 10,000.00/12,619.46 of $17,225.44, or $13,650.00, but, inasmuch as the maximum limit of the two policies was $10,000, the total of his recoveries is restricted to the face amount of the policies with interest. The defendants, on the other hand, contend that the $17,225.44 reproduction cost new of the labor and materials necessary to restore the building should be depreciated by 60%, the extent of depreciation applied to the reproduction cost new of the building in determining its actual cash value immediately prior to the fire. Thus, the defendants assert that the way to figure the plaintiff's loss is to depreciate the $17,225.44 value for labor and new materials by 60% which produces a net loss to the plaintiff of $6,890.18 on account of which he is entitled to recover from the defendants on the two policies 10,000.00/12,619.46 thereof or $5,459.16.

The learned trial judge did not adopt the contention of either the plaintiff or the defendants but left it to the jury to find specially what they estimated the damage to the plaintiff to be. The jury, by special verdict, found that sum to be $14,000. The court then

applied the formula provided by the co-insurance clauses to the damage as found by the jury (viz., 10,000.00/12,619.46 of $14,000.00) and, finding the result to be in excess of the $10,000 total insurance, the court molded verdicts for the plaintiff against the defendants, separately, each for $5,000 plus $325 interest. The judgments from which the defendants have appealed were entered on the respective verdicts.

While we approve the result reached by the court below for reasons which will hereinafter appear, we are unable to see anything in the case for submission to a jury or to understand how the jury could possibly have arrived at $14,000 as the extent of the plaintiff's loss due to the damage by fire. There were no facts from which loss to the plaintiff in that amount could be logically deduced. Nor did the trial judge give the jury any standard by which it could calculate such a sum. The only evidence in the case as to the damage due to the fire (and that was stipulated) was that the reproduction cost new of the labor and materials necessary to repair the damage and restore the building to its prior use was $17,225.44. However, the submission to the jury was harmless error in the circumstances. The $14,000 finding of loss to the plaintiff, when reduced proportionately as required by the co-insurance clauses, still left a loss in excess of the aggregate face amount of the policies for which the plaintiff was entitled to recover in full. The sole question in the case is whether the loss as determined by the reproduction cost new of the restoration should be depreciated by the percentage of depreciation applicable to the building as a whole in determining its actual cash value immediately prior to the fire. Under the decisions of this court, that question must be answered in the negative.

What the defendant companies insured against was loss to the plaintiff for damage by fire to his building not exceeding the amounts named in the respective

policies. Whether the damage was partial or total is immaterial. The pertinent inquiry is,—What is the amount of the insured's loss? As is well known, present-day costs of labor and materials greatly increase the expense of building-restoration which, necessarily, must be done with the labor and materials currently available. If new conditions make the repair work more costly, the extent of the damage to the insured is automatically the greater by so much. And, as it is a part of the insurer's undertaking to make the insured whole insofar as possible within the limits of the policy, the augmented damage due to increased costs of restoration is the liability of the insurer up to the specified amount of the insurance. The underlying principle was clearly recognized and applied in *Pennsylvania Company, Etc., v. Philadelphia Contributionship,* 201 Pa. 497, 500, 51 A. 351.

In that case the cost of restoring a building, partly destroyed by fire, was actually doubled, because of a statutory change in local building law, over what the cost would have been had it been possible to carry out the reconstruction in accordance with the plans under which the building was originally constructed. No depreciation of the increased cost new of the reconstruction was allowed in the *Philadelphia Contributionship* case although (as here) the restoration was incorporated in and became a part of a depreciated building. In the opinion for the Court of Common Pleas No. 4 of Philadelphia County on the case stated raising the question in that case, Judge WILLSON posed, in the alternative, as the question involved whether "the true result [as to the insured's loss is] to be reached by taking the cost of reconstruction according to the conditions existing and lawfully imposed at the time when the fire occurred" and then answered that question as follows: "Certainly it would not be claimed that the insurers are only liable for such an estimate of cost as

would be based upon the market price of materials at the time when the contract of insurance was made. It would seem, also, if the materials out of which the building was originally constructed were not to be obtained at the time of the fire and reconstruction, that the insurers would be liable for the cost of reconstruction out of such materials as were reasonably proper and adequate at the time of rebuilding." Judgment was thereupon entered for the insured plaintiff, and, on appeal to this court, the judgment was affirmed on the opinion of Judge WILLSON.

Twenty-eight years later, in *Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 561, 151 A. 285, we stated the rule of the *Philadelphia Contributionship* case, supra, to be that ". . . in ascertaining the loss resulting from the partial burning of a building, the true result is to be reached by taking the cost of reconstruction according to the conditions existing and lawfully imposed at the time when the fire occurred." After defining "Actual cash value in a policy of insurance [as meaning] what it would cost to replace a building or a chattel as of the date of the fire", the opinion in the *Fedas* case observed (p. 563) that "There enters into actual cash value of the part destroyed the fact that it was a part of an entire property and the use made of it. It is summed up in the idea 'the cost of replacing in as nearly as possible the condition as it existed at the date of the fire.'" It was then declared that "The actual cost of new material, with deduction for depreciation, which is not sufficient to replace the building as nearly as it could be as of the date of the fire, does not comply with the policy, which was to insure against loss not exceeding the amount named in the insurance." Mr. Justice KEP-HART, speaking for this court in the *Fedas* case, further said (pp. 563-564),—"Complaint is made that the estimate in evidence was based on the cost price of new

material, without depreciation, for the restoration of a frame building at least four or five years old. This technical objection to the offer, because it was new material undepreciated, is without merit, . . . . The rule established by our decisions seeks a result which will enable the parties to restore the property to as near the same condition as it was at the time of the fire, or pay for it in cash; that was the loss insured against."

The *Fedas* case has since been unquestionably followed several times. The last preceding quotation from it, above, was repeated in *P.O.S. of A. Hall Association v. Hartford Fire Insurance Co.,* 305 Pa. 107, 112, 157 A. 259. And, in *Metz v. Travelers Fire Insurance Company,* 355 Pa. 342, 346, 49 A. 2d 711, we quoted with approval from it to the effect that " 'If part of the building destroyed cannot be replaced with material of like kind and quality, then it should be substantially duplicated within the meaning of the policy.' "

The policies of insurance here involved, like those in the *Fedas, P.O.S. of A.* and the *Metz* cases, supra, contain a clause insuring against loss ". . . to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss . . . ." The legal meaning of that clause having been determined and established by prior decisions of this court, we cannot now depart therefrom without impairing the obligation of the contracts as written. Nor is there any legally meritorious basis for suggesting the necessity for a change in the interpretation of the contracts. The defendant companies prepare their own policy forms and presumably exclude therefrom anything for which they desire not to assume liability. Moreover, insurance companies are, of course, conversant with the germane court decisions. As Mr. Justice STERN observed in *Snader v. London & Lancashire In-*

*demnity Company,* 360 Pa. 548, 551, 62 A. 2d 835,—
"The reason for this [i.e., the rule of construction favoring the insured] is that the language of the policy is prepared by the insurer, presumably with the purpose in mind of protecting itself against future claims in regard to which it does not desire to accept liability." Any change in the defendants' policies in order to avoid in the future the impact of our prior decisions is for them to ponder. What they presently seek cannot justly be accorded by court decision.

The appellants' particular complaint is induced by what they point to as anomalies in the payments of insurance required for partial, as distinguished from total, loss. For instance, had the plaintiff's entire building been destroyed by the fire, he would have received under the insurance policies the face amount thereof for a total of $10,000, the same as he receives for a partial destruction amounting to what the defendants calculate was 44% of the building. Consequently, the defendants stress that for the partial loss the plaintiff has $10,000 in insurance money and 56% of the building left, whereas if the building had been consumed in its entirety, he would have had only the $10,000 insurance money. But, that disparity cannot operate to diminish what the defendants insured against, namely, to make the plaintiff whole as far as possible for the cost of restoring the building to its prior use up to the amount of the insurance in the policies. As a matter of fact, even with the face amount of the insurance received in payment of the partial loss, the plaintiff will still not be whole. He receives $10,000 insurance money, but it will cost him $17,225.44 in labor and new materials to restore the building to its use at the time of the fire. He will, therefore, be required to contribute additionally from his own funds $7,225.44 for the reconstruction of the building which, when restored, will still be a depreciated building. As

already stated, if the defendants wish to bring about a different result under circumstances similar to those present here, they will have to change the terms of their policies in order to achieve that end.

Judgments affirmed.