# Peltz v. Nationwide Mutual Insurance Co.

*Joseph F. Roda* and *Robert J. LaRocca,* for plaintiffs.
*James C. Haggerty* and *Robert T. Horst,* for defendants.

HERRON, *J.,* August 13, 2001—This matter hinges on the definition of the term "actual cash value" as it is used in an insurance policy. Specifically, the court is faced with the narrow issue of whether an insurer is entitled to deduct depreciation when compensating an insured for repairing partial loss to a building under an actual cash value policy where that term is undefined in the policy. This opinion in particular addresses cross-motions for summary judgment filed by named class action plaintiffs Russell Peltz, Linda Peltz and Peltz Boxing Promotions Inc. and defendants Nationwide Mutual Insurance Co. and Nationwide Mutual Fire Insurance Co. on the plaintiffs' claim for breach of contract. For the reasons set forth in this opinion, each of the motions is granted in part and denied in part.

## BACKGROUND

The relevant facts in this matter are quite straightforward. On June 25, 1999, the plaintiffs' building at 2501

Brown Street, Philadelphia, Pennsylvania, was partially destroyed by fire. Stipulation at ¶1. At the time, the plaintiffs were insured under a Nationwide businessowner's insurance policy that covered the premises and included the following provision addressing valuation of property:

"(d) We will determine the value of covered property as follows:

"(1) At replacement cost (without deduction for depreciations), except as provided in (2) through (7) below. . . .

"(2) If the 'actual cash value—buildings' option applies, as shown in the declarations paragraph (1) above does not apply to buildings. Instead, we will determine the value of buildings at actual cash value." Stipulation exhibit B at ¶6d.

The policy does not provide a definition of "actual cash value." Stipulation exhibit C. The plaintiffs elected the actual cash value—buildings option set forth in the policy (ACV option), which Nationwide asserts had lower premiums. Defendants' exhibit 2 at ¶¶7-8.[1]

Nationwide estimated the replacement cost of the damaged portion of the building to be $42,055 but deducted depreciation in the amount of $5,270.09. *Id.* at ¶5. On the basis of these calculations, Nationwide paid the plaintiffs $36,784.91. *Id.* at ¶6. In response, the plaintiffs

---

1. As an alternate option, the plaintiffs could have selected a replacement cost option, under which they would have been compensated "[a]t replacement cost (without deduction for depreciation)," with certain exceptions. Stipulation at exhibit B ¶6d(1). This option is referred to as the "replacement cost option."

brought the instant action for breach of contract and statutory bad faith.[2] In the motions, each of the parties seeks summary judgment on the plaintiffs' breach of contract claim.[3]

## DISCUSSION

The key issue in dispute in this matter is whether the plaintiffs' selection of the ACV option allows Nationwide to deduct depreciation from the compensation it provided to repair the partial destruction of the building. While Pennsylvania Superior Court decisions on the general subject of depreciation deductions are less than clear, the Pennsylvania Supreme Court has spoken clearly on this issue in two cases, and numerous courts in Pennsylvania and elsewhere have followed its reasoning and applied its principles. On the basis of these decisions, the court concludes that the policy and the circumstances set forth in the stipulation do not permit depreciation deductions and that summary judgment in favor of the plaintiffs and against Nationwide Fire is warranted. With regard to Nationwide Mutual, however, the plaintiffs' allegations are without merit, and the claim against it must be dismissed.

Pa.R.C.P. 1035.2 allows a court to enter summary judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action." A court must grant a motion for summary judgment when

---

2. This claim is brought pursuant to 42 Pa.C.S. §8371.

3. The court acknowledges that the procedural chronology of the motions is unusual, as they come prior to certification of a class in this matter.

a non-moving party fails to "adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996). Where there are material issues of fact, however, summary judgment may not be granted.

## I. *Nationwide Is Not Collaterally Estopped From Presenting Its Arguments in This Matter*

As an initial matter, the plaintiffs rely on a recent decision by the Federal District Court for the Middle District of Pennsylvania to argue that Nationwide is collaterally estopped from defending itself in this case. The court finds the plaintiffs' argument unconvincing.

The doctrine of collateral estoppel, also known as claim preclusion, "operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being relitigated in a subsequent suit." *Spisak v. Edelstein,* 768 A.2d 874, 876-77 (Pa. Super. 2001) (quoting *Incollingo v. Maurer,* 394 Pa. Super. 352, 356, 575 A.2d 939, 940 (1990)). The doctrine requires the satisfaction of four elements:

"Collateral estoppel applies when the issue decided in the prior adjudication was identical with the one presented in the later action, there was a final judgment on the merits, the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication." *In re Iulo,* 564 Pa. 205,

210, 766 A.2d 335, 337 (2001) (citing *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975)).

In presenting their collateral estoppel argument, the plaintiffs direct the court's attention to *Albert v. Nationwide Mutual Fire Insurance Co.,* civ. no. MD3, CV 99-1953 (M.D. Pa. May 3, 2001).[4] In *Albert,* the plaintiffs brought an action for breach of contract and bad faith based on the insurers' deduction of depreciation when compensating the plaintiffs for the partial loss of their rental property. The *Albert* insurance policy provided as follows:

"*Loss settlement.* Covered property losses are settled as follows: . . .

"(b) buildings under coverage A or B at replacement cost, without deduction for depreciation, subject to the following: . . .

"(4) We will pay no more than the actual cash value of the damage unless:

"(a) actual repair or replacement is complete; or

"(b) the cost to repair or replace the damage is both:

"(i) less than 5 percent of the amount of insurance tha[n] the policy on the building; and

"(ii) less than $2,500.

"(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value ba-

---

4. The defendants in *Albert* were Nationwide Fire, Nationwide Insurance and Nationwide Insurance Enterprise.

sis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis." Slip op. at 6-7 n.2.

After reviewing Pennsylvania law, the *Albert* court found that no provision in the insurance policy allowed the deduction of depreciation in calculating actual cash value. On this basis, it held that the depreciation deduction was improper and ordered that the amount deducted be added back into the repair estimates.

Although there are striking similarities between *Albert* and the instant case, the issues presented in the two cases are not identical, as the language in the two insurance policies differ significantly. In particular, the *Albert* policy did not provide a choice between an actual cash value option and a replacement cost option, as the instant policy does, and provided substantially different coverage from the instant policy.[5] In addition, the policy in *Albert* explicitly allowed the plaintiffs to recoup any depreciation deductions once certain conditions were met. Given the *Albert* court's focus on specific language, the court must conclude that the issues presented in the two actions are distinct and that the doctrine of collateral estoppel is inapplicable here.[6]

---

5. The insurance policy in *Albert* was a Nationwide dwelling policy, while the instant policy is a Nationwide businessowner's policy.

6. Even if the issues in *Albert* and the instant case were identical, there is no indication that Nationwide Mutual was a defendant in *Albert*. This alone would prevent the application of collateral estoppel to Nationwide Mutual.

## II. *Pennsylvania Case Law Generally Prohibits an Insurer From Deducting Depreciation When Compensating an Insured for Partial Loss Repairs Under an Actual Cash Value Policy*

There are a number of Pennsylvania cases addressing the deduction of depreciation when compensating an insured party for partial loss repairs to a building. When examined together, these cases hold that depreciation deductions are impermissible under such circumstances.

The first case to address this topic was *Fedas v. Insurance Company of the State of Pennsylvania,* 300 Pa. 555, 151 A. 285 (1930). In *Fedas,* the Pennsylvania Supreme Court considered whether an insurer was entitled to deduct depreciation in the event of a partial loss where the relevant fire insurance policy allowed compensation for "[a]ctual cash value (ascertained with proper deductions for depreciation) [on] the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace the same with materials of like kind and quality within a reasonable time after such loss or damage." 300 Pa. at 561, 151 A. at 287.

The Pennsylvania Supreme Court initially discussed the difference between actual cash value and market value in the context of the policy in question:

"General speaking 'actual cash value' does not mean market value, as the term is understood. 'Market value,' as here urged, embodies what a purchaser willing to buy feels justified in paying for property which one is willing but not required to sell. 'Market value' includes factors of time, place, circumstance, use, and benefit; depreciation is included, but one figure is the result of these

considerations, the price to be paid. *Ordinarily actual cash value has no relation to any of these factors;* it is value under all times, such as the cost of manufacturing or building or book value. The policy intended something different from market value; the latter includes 'depreciation' while the 'actual cash value' of the policy is to be diminished by 'depreciation.' *Actual cash value in a policy of insurance means what it would cost to replace a building or a chattel as of the date of the fire.*

"Where a building is entirely destroyed, the application of the rule is simple; where a building is partially destroyed, it may be difficult to arrive at actual cash value, less depreciation if it is to be considered; but difficulties cannot prevent the right to compensation. There enters into actual cash value of the part destroyed the fact that it was a part of an entire property and the use made of it. It is summed up in the idea *'the cost of replacing in as nearly as possible the condition as it existed at the date of the fire.'* " 300 Pa. at 562-63, 151 A. at 288. (emphasis added)

Ultimately, the *Fedas* court concluded that the insured was entitled to the cost of replacing the damaged portion of the building, regardless of authorized depreciation deductions:

"If the new material is to be depreciated to reach the actual cash value contemplated by the policy, the timber or part destroyed must be considered in connection with the whole structure and valued accordingly, and should reflect the use in place. The result reached is that called for in the policy—*replacement as nearly as possible, or its cost.* If part of the building destroyed cannot be replaced with material of like kind and quality, then it

should be substantially duplicated within the meaning of the policy.

"Complaint is made that the estimate in evidence was based on the cost price of new material, without depreciation, for the restoration of a frame building at least four or five years old. This technical objection to the offer, because it was new material undepreciated, is without merit, since the estimate had value as evidence bearing on the ultimate question. . . . To sum up, *'actual cash value' means* the actual value expressed in terms of money of the thing for the purpose for which it was used,—in other words, *the real value to replace.* The rule established by our decisions seeks a result which will *enable the parties to restore the property to as near the same condition as it was at the time of the fire, or pay for it in cash;* that was the loss insured against." 300 Pa. at 563-64, 151 A. at 288. (emphasis added)

*Fedas* thus established the rule that an insurance policy promising actual cash value requires an insurer to pay the real value to replace or repair in the event of a partial loss. See also, *Metz v. Traveler's Fire Insurance Co.,* 355 Pa. 342, 346, 49 A.2d 711, 713 (1946) (relying on identical insurance policy language to conclude that the insured was entitled to replacement of property, even if the cost of replacement exceeded the actual cash value less depreciation); *Patriotic Order Sons of America Hall Ass'n v. Hartford Fire Insurance Co.,* 305 Pa. 107, 112, 157 A. 259, 260 (1931) (comparing *Fedas's* definition of "actual cash value" as "the actual value expressed in terms of money of the thing for the purpose for which it was used,—in other words, the real value to replace" with the definition of "sound value").

Twenty-two years later, the Pennsylvania Supreme Court considered a similar issue in *Farber v. Perkiomen Mutual Insurance Co.,* 370 Pa. 480, 88 A.2d 776 (1952). In *Farber,* the court examined the propriety of depreciation deductions in a fire insurance policy that provided for compensation "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss." 370 Pa. Super. at 486, 88 A.2d at 779. As in *Fedas,* the insured had suffered a partial loss to the property and sought to prevent the insurer from deducting depreciation.

Relying heavily on *Fedas,* the *Farber* court held that the insured was entitled to the full amount necessary to restore the partially destroyed building to its pre-loss condition[7] and chastised the defendants for arguing otherwise:

"The legal meaning of that clause having been determined and established by prior decisions of this court, we cannot now depart therefrom without impairing the obligation of the contract as written. Nor is there any legally meritorious basis for suggesting the necessity for a change in the interpretation of the contracts. The defendant companies prepare their own policy forms and presumably exclude therefrom anything for which they desire not to assume liability. Moreover, insurance companies are, of course, conversant with the germane court

---

7. The Supreme Court in *Farber* noted that *Fedas'* approach on this topic "ha[d] been unquestioningly followed several times." 370 Pa. Super. at 486, 88 A.2d at 779.

decisions. As Mr. Justice Stern observed in *Snader v. London & Lancashire Indemnity Company,* 360 Pa. 548, 551, 62 A.2d 835, [836,] 'The reason for this [*i.e.,* the rule of construction favoring the insured] is that the language of the policy is prepared by the insurer, presumably with the purpose in mind of protecting itself against future claims in regard to which it does not desire to accept liability.' Any change in the defendants' policies in order to avoid in the future the impact of our prior decisions is for them to ponder. What they presently seek cannot justly be accorded by court decision." 370 Pa. Super. at 486-87, 88 A.2d at 779.

Having established the insurance companies' obligations, the court went on to state that any potential windfall gained by the insured was of no consequence:

"The appellants' particular complaint is induced by what they point to as anomalies in the payments of insurance required for partial, as distinguished from total, loss. For instance, had the plaintiff's entire building been destroyed by the fire, he would have received under the insurance policies the face amount thereof for a total of $10,000, the same as he received for a partial destruction amounting to what the defendants calculate was 44 percent of the building. Consequently, the defendants stress that for the partial loss the plaintiff has $10,000 in insurance money and 56 percent of the building left, whereas if the building had been consumed in its entirety, he would have had only the $10,000 insurance money. But, that disparity cannot operate to diminish what the defendants insured against, namely, to make the plaintiff whole as far as possible for the cost of restoring the building to its prior use up to the amount of

the insurance in the policies. . . . As already stated, if the defendants wish to bring about a different result under circumstances similar to those present here, they will have to change the terms of their policies in order to achieve that end." 370 Pa. Super. at 487-88, 88 A.2d at 779-80.

The Pennsylvania Superior Court gave a significantly broader and unqualified definition of "actual cash value" in *Canulli v. Allstate Insurance Co.,* 315 Pa. Super. 460, 462 A.2d 286 (1983). Although the underlying case centered on fire insurance coverage due to the complete destruction of the plaintiffs' home, the immediate dispute facing the Superior Court in *Canulli* revolved around whether the trial court's order was interlocutory and therefore unappealable. In reviewing the matter, the court briefly addressed the definition of "actual cash value":

" 'Actual cash value' is the actual cost of repair or replacement less depreciation. See *Farber v. Perkiomen Mutual Insurance Company,* 370 Pa. 480, 481-82, 88 A.2d 776, 777 (1952); *Patriotic Order Sons of America Fire Hall Assn. v. Hartford Fire Insurance Co.,* 305 Pa. 107, 112, 157 A. 259, 260 (1931); Wendy Evans Lehmann Anno., *Depreciation as Factor in Determining Actual Cash Value for Partial Loss Under Insurance Policy,* 8 A.L.R. 4th 533 (1981). Under certain circumstances the policy also obligated the insurer to pay 'replacement costs.' This is actual cost of repair or replacement without deduction for depreciation. See *Reese v. Northern Insurance Company of New York,* 207 Pa. Super. 19, 215 A.2d 266 (1965); *Higgins v. Insurance Company of North America,* 256 Or. 151, 163, 469 P.2d 766, 774 (1970); Anno., *Construction and Effect of Provision of Property Insurance Policy Permitting Recovery of Replacement*

*Cost of Property, in Excess of Actual Cash Value,* 66 A.L.R.3d 885 (1975)." 315 Pa. Super. at 462-63, 462 A.2d at 287.

This sweeping definition of "actual cash value" appears to be out of step with that used in both *Fedas* and *Farber.* Moreover, unlike *Fedas* and *Farber, Canulli* involved the destruction of the entire property in question, not merely part of it.

Like *Canulli, Gilderman v. State Farm Insurance Co.,* 437 Pa. Super. 217, 649 A.2d 941 (1994), focused on an issue distinct from the applicability of depreciation deductions but nonetheless set forth an applicable definition of "actual cash value." There, the Superior Court addressed whether an insurer could deduct a flat 20 percent from replacement costs estimates where the policy required it to pay actual cash value.[8] In resolving this question, the court examined the relevant insurance policy, which required the insurer to pay "the cost of repair or replacement, without deduction for depreciation" but only actual cash value "until actual repair or replacement is completed." 437 Pa. Super. at 220, 649 A.2d at 942.

Because the insurance policy did not define "actual cash value," the court initially cited the definition in *Canulli* and interpreted the term as meaning "the actual cost of repair or replacement less depreciation." 437 Pa. Super. at 221, 649 A.2d at 943 (citing *Canulli,* 315 Pa. Super. at 462, 462 A.2d at 287). As the court noted, however, the issue before it did not include depreciation. In-

---

8. This 20 percent allegedly represented contractor overhead and profit.

deed, the court felt "compelled to indicate precisely what this appeal does *not* involve" and pointed out that it did not address whether the insureds "were entitled to full repair or replacement costs without a depreciation deduction prior to actual repair or replacement." 437 Pa. Super. at 221-22, 649 A.2d at 943.[9] See also, *Gatti v. State Farm Fire & Cas. Co.*, January term 1997, no. 1361 (C.P. Phila. January 19, 1999), *aff'd without opinion,* 748 A.2d 781 (Pa. Super. 1999), *app. denied,* 563 Pa. 663, 759 A.2d 386 (2000) (allowing deduction for depreciation for partial loss where contract provided for payment of actual cash value until complete actual repair or replacement).

The Superior Court touched on the term "actual cash value" once again in *London v. Insurance Placement Facility of Pennsylvania,* 703 A.2d 45 (Pa. Super. 1997). In *London,* the court addressed whether an insurer providing a policy under the Pennsylvania Fair Plan Act[10] should be permitted to depreciate the cost of repairing a building partially destroyed by fire. There, the insurance

---

9. While the *Canulli* definition of "actual cash value" has been cited in several other Pennsylvania state court opinions, in no case was it central to the issue at hand, and the reference to the *Canulli* definition is merely dictum. See *e.g., Ditch v. Yorktowne Mutual Insurance Co.,* 343 Pa. Super. 22, 493 A.2d 782 (1985) (determining whether the term "full replacement value" as used in the relevant insurance policy was ambiguous); *In re Estate of Lychos,* 323 Pa. Super. 74, 84 n.4, 470 A.2d 136, 141 n.4 (1983) (examining whether surcharges in administrating trust were legitimate); *TJS Brokerage & Co. v. Hartford Casualty Insurance Co.,* 45 D.&C.4th 1 (C.P. Phila. 2000) (discussing replacement of property and requiring insurer to process insured's claims).

10. 40 Pa.C.S. §§1600.101-1600.502. The Fair Plan Act was designed to allow insurance coverage in urban areas where insurance would otherwise be unavailable.

policy in question authorized compensation "to the extent of the actual cash value of the property at time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality . . . ." 703 A.2d at 47. (emphasis omitted) "Actual cash value," in turn, was defined in a policy endorsement as "the cost to repair or replace the damaged property *less deductions for physical deterioration (depreciation)* and obsolescence." *Id.* (emphasis in original) The insureds argued that Pennsylvania precedent prohibited a deduction for depreciation in a partial loss situation where coverage was provided under a standard fire policy,[11] and that this prohibition extended to Fair Plan Act policies as well.

The *London* majority disagreed with the insureds as to the relevance of the standard fire policy language. First, they held that a Fair Plan Act basic property insurance policy was not the equivalent of a standard fire insurance policy, either by statute or by policy language, and that any depreciation limitations on standard fire insurance policy payments would not necessarily apply under a Fair Plan Act policy. On the basis of this distinction, the majority refrained from addressing depreciation deductions in the context of a standard fire insurance policy. The court then turned to the language of the policy in question and found that depreciation deductions could be applied when either replacing or repairing the property.

In reaching its conclusion, the *London* court offered several caveats and conditions for its decision. As a pre-

---

11. Under Pennsylvania law, fire insurance policies are required under 40 Pa.C.S. §636 to include specific language.

liminary matter, the court cited the *Farber* court's "suggestion" that insurance companies adjust their policies to allow depreciation deductions in a partial loss situation and stated that the language in the policy at issue, especially the definition of "actual cash value," was key to its holding:

"The *Farber* decision arguably prevents insurance companies from deducting depreciation in the event of a partial loss that does not exceed the depreciated value of the whole property. If the companies wanted to avoid such a result, the court plainly suggested that they should modify their policies.

"As the endorsement defining 'actual cash value' demonstrates, the facility has done exactly what the *Farber* court advised. Presumably dissatisfied with the interpretation of 'actual cash value' by the court the facility sought to define the phrase with greater precision. Especially when the high-risk associated with insuring property under the Fair Plan is considered it is logical that the facility would choose to protect itself with specific definitions of terms or phrases. Finally, it is an extremely unremarkable choice when one considers that our Supreme Court invited insurance companies to do this in *Farber*." 703 A.2d at 50. (footnote omitted)

The majority also acknowledged that Pennsylvania law may prohibit a depreciation deduction in a standard fire policy context and that its holding hinged on the fact that the policy at issue was a Fair Plan Act policy:

"Policyholders in the instant appeal urge upon us the argument that existing precedent disallows a deduction for depreciation in a partial loss situation where cover-

age is provided under a standard fire policy (thereby placing Pennsylvania in a minority position among the states). They may be correct. See *e.g.,* Wendy Evans Lehmann J.D., Anno., *Depreciation as Factor in Determining Actual Cash Value for Partial Loss Under Insurance Policy,* 8 A.L.R. 4th 533, 551-52. However, the narrow issue before us does not involve a standard fire policy, but rather one issued under the Fair Plan, and *that distinction is critical.*" 703 A.2d at 47-48. (emphasis added)

In addition, it is worth noting that the *London* court eschewed any direct mention of *Canulli* and relied on *Gilderman* only for the definition of a replacement cost policy.

In response to the majority decision, Judge Kate Ford Elliot wrote an extensive concurring and dissenting opinion in which she accepted many of the insureds' arguments that the *London* majority did not reach or address. Judge Ford Elliot stated that Pennsylvania law disallowed depreciation deductions in the event of a partial loss under a standard fire policy[12] and that this prohibition applied to Fair Plan Act policies.[13] She went on to summarize the amounts an insured could recover for a partial loss under a standard fire policy, as set forth in *Fedas* and *Farber,* as follows:

---

12. In discussing *Fedas,* Judge Ford Elliot noted that "*Fedas* has consistently been interpreted as holding that, when determining actual cash value, depreciation should not be deducted from the cost to repair a building partially damaged by fire." 703 A.2d at 55. (citations omitted)

13. It is this first statement that went unaddressed by the *London* majority and that the plaintiffs advance in this matter.

"According to my analysis *infra,* an insured under an 'actual cash value' policy in Pennsylvania is entitled to whichever is least of: (1) the limits of liability contained in the insurance policy; (2) the actual cash value of the building as a whole, which is calculated by deducting depreciation from the cost to replace the building; and (3) the cost to repair or replace. By definition, the cost to replace a building totally destroyed by fire will always be greater than or equal to the building's actual cash value, whereas the cost to repair or replace in the event of a partial loss may be less than the building's actual cash value." 703 A.2d at 58-59 n.9.

Judge Ford Elliot also took issue with the majority's holding that an insurer could alter the definition of "actual cash value" through an endorsement[14] and concluded

---

14. The reasons behind Judge Ford Elliot's conclusion were as follows:

"Nevertheless, the majority reasons that the facility was only responding to the invitation of our Supreme Court in *Farber v. Perkiomen Mutual Insurance Co.,* 370 Pa. 480, 88 A.2d 776 (1952), when it redefined the term 'actual cash value' to mean 'the cost to replace *or repair* with proper deductions for depreciation.' (Majority opinion at 49-50.) I find this argument unpersuasive for several reasons. First, standard fire policy insurance has been codified since at least 1921, when deviations from the statutorily mandated provisions were likewise statutorily proscribed. 40 P.S. §§636, 637. Our Supreme Court has thus been defining the *statutory* term 'actual cash value' as 'the cost to *replace* at the time of the loss' since at least 1930, when it decided *Fedas v. Insurance Company of the State of Pennsylvania,* 300 Pa. 555, 151 A. 285 (1930). As the *Farber* court observed, 'The legal meaning of that clause having been determined and established by prior decisions of this court, we cannot now depart therefrom without impairing the obligation of the contracts as written.' *Farber v. Perkiomen Mutual Insurance Co., supra* at 486, 88 A.2d at 779. Additionally, the 'invitation' issued by the *Farber* court provides only that '[a]ny change in the defendants' policies in order to avoid in the future

that Fair Plan Act policies did not allow insurers to deduct depreciation in the event of a partial loss under the policy in question.

In addition to these five Pennsylvania state court cases, the parties have discussed *Sylvania Gardens Apartments RJS Sherwood Associates v. Hartford Fire Insurance Co.,* civil action no. 98-5870, 2000 WL 764919 (E.D. Pa. June 13, 2000). There, the insurer sought to deduct depreciation from payments to the insured made under the actual cash value provision of the policy. Like the insurance policies in *Fedas* and *Farber* the *Sylvania Gardens* policy did not define "actual cash value" or specify that depreciation was to be deducted.

The *Sylvania Gardens* court first noted that *Farber* stood for the propositions that "in the context of a partial loss, a deduction for depreciation could not be taken from the cost of new material necessary to return the property to its pre-fire condition." 2000 WL 764919 at *3. Relying on both *Farber* and *London,* the court went on to find that the insurer should have specified that it would deduct depreciation from payments in the policy:

"[G]iven the above discussion and the instant matter's substantially identical language to the language discussed in *Farber,* the analysis of the *Farber* court is applicable

---

the impact of our prior decisions is for them to ponder. What they presently seek cannot justly be accorded by court decision.' *Id.* This 'invitation' can easily be read as no more than a suggestion that insurers attempt to convince the General Assembly to either alter the statutorily mandated provisions of section 636, or to redefine the term 'actual cash value.' Certainly such a reading is far more consonant with the language of section 637 than the reading advanced by the facility and adopted by the majority." 703 A.2d at 54-55. (footnote omitted) (emphasis in original)

to this dispute. Had defendant wished to avoid this result it simply needs to define the method which would be used to define 'actual cash value' in a partial loss situation within the terms of the excess policy it issued to the insureds. As a result of the foregoing, the court finds that no genuine issue of material fact exists with respect to defendant's inability to deduct depreciation from the cost of repairing plaintiffs' partially damaged property." 2000 WL 764919 at *4. See also, *Albert,* slip op. at 10 (concluding that Nationwide's failure to specify that "actual cash value" included deductions for depreciation rendered such deductions improper).

A review of the Pennsylvania Supreme Court cases of *Fedas* and *Farber* establishes that, in the absence of language to the contrary, an actual cash value policy does not allow an insurer to deduct depreciation from compensation for repairs in the event of a partial loss. Although Nationwide has proffered two citations that give different interpretations of these two cases,[15] both *Fedas*

---

15. Nationwide has cited one article that directly contradicts this interpretation. See Stephen A. Cozen, *Measures and Proof of Loss To Buildings and Structures Under Standard Fire Insurance Policies: The Alternatives and Practical Approaches,* 12 Forum 647, 654 (1977) (*Fedas* and *Farber* "have been construed not to stand for the proposition that the appraiser may not depreciate a partial loss, but only that the blanket rate of depreciation taken for the purposes of determining actual cash value of the insured structure may not be applied on a blanket basis to such loss."). In addition, the New Jersey Supreme Court cited this portion of Cozen's article as supporting a limited reading of *Fedas* and *Farber,* although the court also addressed the possibility that broader interpretations were legitimate. See *Elberon Bathing Co. v. Ambassador Insurance Co.,* 389 A.2d 439, 442 (N.J. 1978) ("[i]n any event, to the extent that the policy in *Farber* was to the same effect as our statute in respect of coverage, we disagree with the

and *Farber* have been cited repeatedly as standing for this principle.[16] Moreover, the interpretation set forth above finds support in both *London* and *Sylvania Gar-*

---

decision if it meant to hold that the insurer is liable for the replacement cost of a loss without deduction for depreciation."). See also, *Gatti*, slip op. at 5 ("[e]ither plaintiffs' or the defendant's argument can be made with some validity.").

16. In addition to the repeated citations to both cases in Judge Ford Elliot's *London* opinion, numerous cases in other jurisdictions cite *Fedas* for the simple statement that "[a]ctual cash value in a policy of insurance means what it would cost to replace a building or a chattel as of the date of the fire." See *e.g., Steiner v. Middlesex Mutual Assurance Co.,* 689 A.2d 1154, 1163 (Conn. App. Ct. 1997) (quoting *Fedas*); *Armstrong,* 442 N.E.2d at 354 (disagreeing with *Fedas* but noting that it stood for the principle "that an agreement to pay 'actual cash value' requires the insurer to repair or replace the property as nearly as possible to its condition as of the date of the casualty"). Treatises and commentaries regard these cases similarly. Couch on Insurance §178:6, for example, cites *Farber* for the following principle:

"[U]nder fire policies insuring against loss to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality, the percentage of depreciation applicable to the building as a whole in case of total loss could not be used to depreciate that the cost of repair and thus reduce the loss, notwithstanding that the cost of repair exceeded the depreciated value of the building." See also, Johnny Parker, *Replacement Cost Coverage: A Legal Primer,* 34 Wake Forest L. Rev. 295, 296 n.5 (1999) (citing *Farber* to show that "some states prohibit the deduction of depreciation on partial losses"); John L. Palmer, *Cheeks v. California Fair Plan Ass'n: "Actual Cash Value" Is Still Synonymous With "Fair Market Value" in California; Do the Courts Know What This Means?,* 26 W. St. U.L. Rev. 183, 202 (1998-99) (under the "Pennsylvania rule," an insurer determining the amount of loss "may not depreciate the repair costs by the percentage of depreciation it applied to the building as a whole in determining its actual cash value"); Wendy Evans Lehmann, *Depreciation As Factor in Determining Actual Cash Value for Partial Loss Under Insurance Policy,* 8 A.L.R.4th 533, 551-52 (1981) (*Farber* held that "the recovery required was the actual cost of

*dens.*[17] See also, *Stallo v. Insurance Placement Facility of Pa.,* 359 Pa. Super. 157, 166 n.5, 518 A.2d 827, 832 n.5 (1986) (citing *Farber* as rejecting the argument that "the cost of replacing the property should have been reduced to reflect depreciation").

While other Pennsylvania decisions may conflict with this conclusion, each of these decisions can be traced back to one source: the single statement in *Canulli* that " '[a]ctual cash value' is the actual cost of repair or replacement less depreciation." 351 Pa. Super. at 462, 462 A.2d at 287 (citing *Farber,* 370 Pa. at 481-82, 88 A.2d at 777, and *Patriotic Order Sons of America,* 305 Pa. at 112, 157 A. at 260).[18] *Canulli* is easily distinguishable

---

new material without deduction for depreciation," while *Fedas* held that "the actual cost of new material, with deduction for depreciation, . . . would not comply with the policy.").

17. Although the majority in *London* did not reach the question of whether depreciation deductions are permitted in the event of a partial loss under any policy other than a Fair Plan Act policy, it broadly hinted that the argument set forth above may have merit.

18. The exception to this is *Gatti,* which permitted depreciation deductions for a partial loss without relying explicitly on *Canulli.* In *Gatti,* however, the court relied solely on the New Jersey Supreme Court's opinion in *Elberon Bathing Co.* to interpret *Fedas* and *Farber* and it is unclear if the *Gatti* policy defined the term "actual cash value." Moreover, the *Gatti* plaintiffs "never sought or requested from the defendant the replacement cost benefits." Slip op. at 3. In any event, even if *Gatti* were indistinguishable, *Gatti* was affirmed by the Superior Court without opinion, making it of no precedential value. See Pa. Super. Ct. R. 65.37; *Ridley v. State Farm Mutual Automobile Insurance Co.,* 745 A.2d 7, 13 n.5 (Pa. Super. 1999) (an unpublished Pennsylvania Superior Court opinion is of no precedential value); *Reed v. Pennsylvania National Mutual Casualty Insurance Company,* 342 Pa. Super. 517, 521-22, 493 A.2d 710, 712 (1985) (Pennsylvania Superior Court "*per curiam* affirmance of a trial court opinion is of no precedential value"). (emphasis in original)

from the instant case, however, as the insured property was not merely damaged, like the property here and in *Fedas* and *Farber,* but rather *"destroyed* by fire." 351 Pa. Super. at 463, 462 A.2d at 287. (emphasis added) In addition, the broad and sweeping definition provided in *Canulli* is irrelevant to the ultimate holding in the case and is not binding.[19] See *T.B. v. L.R.M.,* 753 A.2d 873, 883 n.2 (Pa. Super. 2000) (dictum in a Pennsylvania Superior Court decision is not binding on a Pennsylvania trial court). As a result, the *Canulli* definition of "actual cash value" as allowing a deduction for depreciation is of no significance in the instant matter, and the court must recognize the general definition of "actual cash value" in a partial loss situation as prohibiting depreciation deductions, as set forth by the *Fedas* and *Farber* courts.[20]

---

19. Indeed, Judge Ford Elliot stated as much in her opinion in *London.* See 703 A.2d at 58 n.7 (noting that "the definition of 'actual cash value' recited by the *Gilderman* and *Canulli* court, was obiter dictum in *Canulli,* the *Canulli* court having quashed the appeal on procedural grounds").

20. To the extent that the *Canulli* definition is applicable, it appears to conflict directly with *Fedas* and *Farber* and is not binding for that reason:

"I note that the sources cited by the *Canulli* court do not define actual cash value as the cost to repair or replace less depreciation. Instead, those sources rely upon the Supreme Court's definition of actual cash value in *Fedas v. Insurance Company of the State of Pennsylvania, supra.* See *Farber v. Perkiomen Mutual Insurance Co., supra* at 485, 88 A.2d at 779 ('Actual cash value in a policy of insurance [means] what it would cost *to replace* a building or chattel as of the date of the fire'), quoting *Fedas v. Insurance Company of the State of Pennsylvania, supra* at 563, 151 A. at 288 (emphasis added); *Patriotic Order Sons of America Hall Ass'n v. Hartford Fire Ins. Co., supra* at 112, 157 A. at 260 ('Actual cash value means . . . the real value to *replace* [ ]'), quoting *Fedas v. Insurance Company of the State of Penn-*

### III. *The Language in the Policy Is Not Sufficient To Except It From the General Pennsylvania Rule Disallowing Depreciation Deductions*

According to Nationwide, the *Fedas* and *Farber* rule regarding depreciation deductions does not apply to the instant case because the language of the policy differs from that in earlier cases. The court cannot agree that the differences in language are significant.

Nationwide contends that the language of the policy is unambiguous and "clearly indicates that an actual cash value policy allows for depreciation deductions." Defendant's motion at 16. In doing so, Nationwide points out that the replacement cost option, as the alternative to the ACV option provides for replacement without depreciation deduction and that the ACV option does not specify that compensation will be provided without a depreciation deduction. Nationwide asserts that this "gives fair notice to the insured that replacement cost coverage is the only option that will restore the damaged property to its original condition and that the actual cash value coverage does not have the same purpose," defendant's motion at 16-17, and contrasts with the policies in *Fedas* and *Farber,* which did not include such an option.

---

*sylvania, supra* at 563, 151 A. at 288 (emphasis added); Lehmann, Annotation, *supra,* 8 A.L.R.4th at 551 (discussing *Fedas* which defined actual cash value as the cost *to replace* a building or chattel as of the date of the fire) (emphasis added)." 703 A.2d at 58 n.7. See also, *Albert,* slip op. at 8 (questioning *Gilderman* and *Canulli's* reliance on *Fedas* and *Farber*); *Sylvania Gardens,* 2000 WL 764919 at *4 (defining "actual cash value" to allow depreciation deductions for a partial loss "appears in direct conflict" with interpretations of *Farber*).

While the language in the policy differs from that in the *Fedas* and *Farber* policies, the court cannot conclude that they provide that Nationwide is entitled to deduct depreciation in the event of a partial loss. Nationwide is correct that the policy offers a choice between the replacement cost option, which specifically disallows deduction for depreciation and involves higher premiums, and the ACV option, which fails to define or to qualify "actual cash value." There is no express indication, however, that depreciation deductions are permitted in calculating actual cash value. Indeed, there is no definition of "actual cash value" anywhere in the policy. Cf. *Perschau v. USF Insurance Co.*, no. civil action 97-7801, 1999 WL 162969 at *4 n.6 (E.D. Pa. March 22, 1999) (granting summary judgment in favor of insurer on depreciation deductions where the relevant policy explicitly provided from actual cash value to be calculated by deducting depreciation).

Even if the court were to accept Nationwide's argument that depreciation deductions are permitted in general, nothing in the policy supports the conclusion that such deductions are authorized for *partial,* as opposed to total, losses, or for *repairing,* as opposed to replacing, the building. According to the policy, actual cash value is to be used in determining "the value of the building," not the value or cost of *repairs* to the building. Stipulation exhibit B at ¶6d(2).[21] This supports the inference that to the extent that depreciation deductions are allowed

---

21. This distinction is especially significant because the policy distinguishes between "the *value of* lost or damaged *property*" and "the *cost of repairing* or replacing the lost or damaged property." Stipulation exhibit B at ¶6a. (emphasis added)

under the ACV option, they are not allowed for repairs and partial losses.

At best, Nationwide could argue that the definition of "actual cash value" is ambiguous. Cf. *Ohio Cas. Ins. Co. v. Ramsey,* 439 N.E.2d 1162, 1165 (Ind. Ct. App. 1982) (noting that, in the absence of a definition or court cases construing the phrase, "actual cash value" "is ambiguous and therefore subject to interpretation").[22] Even this would be to no avail, however. Where a court finds an insurance policy provision ambiguous, "the provision is to be construed in favor of the insured and against the insurer." *Redevelopment Authority of Cambria Cty. v. International Insurance Co.,* 454 Pa. Super. 374, 388, 685 A.2d 581, 588 (1996). (citations omitted) See also, *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999) ("[w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer."); *Tenos v. State Farm Insurance Co.,*

---

22. Provisions in an insurance policy are ambiguous "if they are subject to more than one reasonable interpretation when applied to a given set of facts." *Fayette County Housing Authority v. Housing and Redevelopment Insurance Exchange,* 771 A.2d 11, 13 (Pa. Super. 2001) (citing *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 735 A.2d 100 (1999)). See also, *William v. Nationwide Mutual Insurance Co.,* 750 A.2d 881, 885 (Pa. Super. 2000) (an insurance provision is ambiguous "if reasonably intelligent people could differ as to its meaning"). The question of whether an insurance policy is ambiguous is a matter of law to be decided by the court. *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 201, 519 A.2d 385, 390 (1986). See also, *DiFabio v. Centaur Insurance Co.,* 366 Pa. Super. 590, 594, 531 A.2d 1141, 1143 (1987) (in determining whether an insurance policy is ambiguous, "the court must assess the writing as a whole and not in discrete units").

716 A.2d 626, 629 (Pa. Super. 1998) (ambiguities in an insurance agreement "must be construed in the light most favorable to the insured"). As a result, the policy, if ambiguous, must be interpreted in favor of the plaintiffs, leading to the conclusion that depreciation deductions cannot be allowed under the circumstances present in this matter.

In summary, the court is unconvinced that Nationwide has distinguished the policy from those policies examined *supra* simply by inserting the replacement cost option into the policy and defining it to include depreciation. Had Nationwide desired a definition of "actual cash value" different from that set forth in Pennsylvania case law, it could have accepted the *Farber* court's invitation to redefine the term and specified that depreciation deductions were permitted. Cf. *London,* 703 A.2d at 49-50 (by defining "actual cash value" as "the cost to repair or replace the damaged property less deduction for physical deterioration (depreciation) and obsolescence," the insurer did "exactly as the *Farber* court advised"). Because it chose not to do so, the court cannot find any reasonable distinction between *Fedas* and *Farber,* on the one hand, and the instant case on the other, and must conclude that the general rule prohibiting depreciation deductions for the cost of repairs in the event of a partial loss applies in the instant case.

*IV. The Policy Considerations and the Decisions From Foreign Jurisdictions Cited by Nationwide Are Unpersuasive*

In its effort to sustain its arguments, Nationwide has cited a number of cases from outside of Pennsylvania, as

well as policy considerations militating in their favor. While these considerations and the cases relying on them are reasonable, they cannot convince the court to act contrary to Pennsylvania law.

In its motion, Nationwide points out that "the majority of jurisdictions have ruled that deductions for depreciation may be taken into account when calculating payments for actual cash value in partial loss situations, regardless of whether the policy itself provides a definition of actual cash value." Defendants' motion at 20. To support this assertion, Nationwide cites several cases from other jurisdictions that allow deductions for depreciation under circumstances similar to those here.[23]

Nationwide is correct that Pennsylvania's position on this issue puts it in the minority of jurisdictions. See *London,* 703 A.2d at 48 (noting that disallowing depreciation deductions under an actual cash value policy in the event of a partial loss would "plac[e] Pennsylvania in a minority position among the states"); Lehmann, 8 A.L.R.4th at 537 (noting that it is "generally held" that depreciation is an appropriate factor in calculating actual cash value). Simply being in the minority, however,

---

23. In support of its argument, Nationwide cites the following cases: *Lerer Realty Corp. v. MFB Mut. Ins. Co.,* 474 F.2d 410 (5th Cir. 1973); *Reliance Ins. Co. v. Orleans Parish Sch. Bd.,* 322 F.2d 803 (5th Cir. 1963); *Knuppel v. American Ins. Co.,* 269 F.2d 163 (7th Cir. 1959); *National Tea Co. v. Commerce & Indus. Ins. Co.,* 456 N.E.2d 206 (Ill. App. Ct. 1983); *Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349 (Ind. 1982); *Britven v. Occidental Ins. Co.,* 13 N.W.2d 791 (Iowa 1944); *Higgins v. Insurance Co. of N. Amer.,* 469 P.2d 766 (Ore. 1970); *Zochert v. National Farmers Union Prop. & Cas. Co.,* 576 N.W.2d 531 (S.D. 1998); *Braddock v. Memphis Fire Ins. Corp.,* 493 S.W.2d 453 (Tenn. 1973).

does not invalidate *Fedas* and *Farber*.[24] Thus, the holdings of cases from other jurisdictions that conflict with Pennsylvania law are irrelevant.

Nationwide also highlights the policy reasons for allowing depreciation deductions in the event of a partial loss.[25] These reasons derive from the concern that failing to allow such deductions "would have the effect of

---

24. Moreover, Pennsylvania is hardly alone in prohibiting depreciation deductions under an actual cash value policy. See *e.g., Iowa Nat'l Mut. Ins. Co. v. Osawatomie,* 458 F.2d 1124, 1129 (10th Cir. 1972) (construing "actual cash value" to preclude depreciation deductions); *Glens Falls Ins. Co. v. Gulf Breeze Cottages Inc.,* 38 So.2d 828, 830 (Fla. 1949) (prohibiting depreciation deduction for materials used to repair damaged property); *Farmlands Mut. Life Ins. Co. v. Johnson,* 36 S.W.3d 368 (Ky. 2001) (policy defining "actual cash value" as replacement cost less depreciation did not allow depreciation deduction even where building had been totally destroyed); *Bingham v. St. Paul Ins. Co.,* 503 So.2d 1043, 1056 (La. Ct. App. 1987) (finding that policy's definition of "actual cash value" did not allow depreciation deduction); *Third Nat'l Bank v. American Equitable Ins. Co.,* 178 S.W.2d 915, 924 (Tenn. Ct. App. 1943) (citing *Fedas* and concluding that depreciation may not be deducted from the cost of repairing a damaged building).

25. One of Nationwide's citations summarizes the historical development of replacement cost as distinct from actual cash value, as both terms are used in other jurisdictions:

"Historically, the underlying purpose of property insurance is indemnity. Traditional coverage was for the actual or fair cash value of the property. The owner was indemnified fully by payment of the fair cash value, in effect the market value, which is what the owner lost if the insured building was destroyed.

"However, it was recognized that an owner might not be made whole because of the increased cost to repair or to rebuild. Thus, replacement cost coverage became available. 'Replacement cost coverages . . . go beyond the concept of indemnity and simply recognize that even expected deterioration of property is a risk which may be insured against.' " *Hess v. North Pac. Ins. Co.,* 859 P.2d 586, 587 (Wash. 1993). (citations omitted)

giving the insured more than what he paid for, and would render meaningless much of the reason for paying a high premium for replacement value coverage." Defendants' motion at 22-23. Cf. *Insurance Co. of North America v. Alberstadt,* 383 Pa. 556, 561, 119 A.2d 83, 86 (1956) ("[s]ince fire insurance is only a contract of indemnity and its object is not to permit a gain by the insured but only to compensate him for a loss, it is obvious that he cannot recover insurance in an amount greater than the loss which he sustained"). But, see *Fedas,* 300 Pa. at 563, 151 A.2d at 288 ("[t]here enters into actual cash value of the part destroyed the fact that it was a part of an entire property and the use made of it. It is summed up in the idea 'the cost of replacing in as nearly as possible the condition as it existed at the date of the fire'."). Of the courts cited by Nationwide, the Indiana Supreme Court summarized these reasons most completely and succinctly:

"The cost of repair may exceed the fair market value of the building, and in the case of very old or obsolescent buildings, the difference may be very substantial. To permit recovery of the cost of repair, without also requiring the repairs to be made usually provides an even greater windfall than is provided when repairs are made. In effect the insured sells his building not at its market value but at a much higher figure and for cash." *Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349, 353 (Ind. 1982). See also, *Elberon,* 389 A.2d at 442 ("allowing pure replacement cost would violate the principle of indemnity by providing a windfall to the insured").

While the court understands and appreciates these concerns, they are unpersuasive, as Judge Ford Elliot

articulately stated when she rebuffed concerns similar to Nationwide's in her opinion in *London:*

"[T]he loss insured against in *any* Pennsylvania actual cash value policy is the loss of the actual cash value of the *whole* property, not to exceed the cost to repair or replace the damaged part. So long as the cost to repair or replace is less than the actual cash value of the whole (which will only be true when the loss is partial), the insured is indemnified *only* for the total cost to repair or replace the damaged part; he is not entitled to the actual cash value of the whole building. Where, however, the loss is total or the cost to repair the damaged part is greater than the actual cash value of the whole, the proper measure of recovery will be the loss insured against; namely, 'the actual cash value of the property [the building or other insured property] at the time of the loss' where actual cash value is defined as the cost to replace, less depreciation. . . . Because the actual cash value of a building at the time of the loss is *always* determined by taking a 'proper deduction for depreciation,' the most the insured can *ever* receive is the *depreciated value* of the building. Thus, depreciation is *always* considered when calculating actual cash value. That is the loss the insurer agreed to insure against in an actual cash value policy, and it is the loss upon which the insured's premiums were based: there is no windfall and there is no deluxe replacement cost insurance. The *Fedas* rule, as applied by the *Farber* court, provides only what the parties agreed to; no more and no less." 703 A.2d at 60-61. (citations omitted) (emphasis in original) See also, *Farber,* 370 Pa. at 487, 88 A.2d at 779-80 (dismissing insurer's concerns as to possible windfall to insured). Moreover, there are

equally valid concerns for prohibiting depreciation deductions in the event of a partial loss:

"While replacement cost is a dominant factor in fixing the amount of recovery for total loss of a building, it plays an even greater part in fixing the amount of recovery for a partial loss to a building. It would seem that the only practical way to measure the extent of partial damage to a building would be to inventory its damaged parts, and the only way to express such damage in terms of money would be to count the cost of replacing such parts, so as to restore the building to the same condition it was in just before the fire. And the view which we think supported the better reason and the greater weight of authority is that depreciation may not be deducted from such cost because that would make the sum insufficient to complete the repairs and would leave the building unfinished; and this would fall short of the indemnity contracted for in the policy." *Third Nat'l Bank v. American Equitable Ins. Co.,* 178 S.W.2d 915, 924 (Tenn. Ct. App. 1943) (citations omitted). See also, *Harper v. Penn Mut. Fire Ins. Co. of W. Chester, Pa.,* 199 F. Supp. 663, 666 (E.D. Va. 1961) ("[i]f depreciation is to be deducted from the cost of new materials, it would frequently make the sum insufficient to complete the repairs, thereby resulting in the building being only partially completed"); note, *Valuation and Measure of Recovery Under Fire Insurance Policies,* 49 Colum. L. Rev. 818, 826 (1949) ("[t]he rationale of these cases [disallowing depreciation deductions] is that if a depreciation deduction is taken, the insured will realize a sum insufficient to pay for repairing the property at the time of loss."). As a result, neither Nationwide's foreign cases nor its public policy

concerns justify disregarding Pennsylvania precedent and allowing depreciation deductions.

### V. *The Plaintiffs' Breach of Contract Claim Against Nationwide Mutual Must Be Dismissed*

In an unrelated argument, Nationwide urges the court to dismiss the breach of contract count against Nationwide Mutual. In this regard, the court must agree that the claim against Nationwide Mutual must be dismissed.

According to the plaintiffs, the policy was sold by a "Nationwide agent" who "led them to believe that they were dealing with 'Nationwide,' *i.e.,* the parent corporation," Mutual Insurance. Plaintiffs' response at 23. This, the plaintiffs argue, establishes that Mutual Insurance "held itself out as the insurer and clothed its agent with apparent authority to enter into an insurance contract on its behalf." *Id.*

Pennsylvania recognizes the doctrine of apparent authority as follows:

"Apparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he or she purports to exercise. . . . The third party is entitled to believe the agent has the authority he purports to exercise only where a person of ordinary prudence, diligence and discretion would so believe. . . . Thus, a third party can rely on the apparent authority of an agent when this is a reasonable interpretation of the manifestations of the principal." *Joyner v. Harleysville Insurance Co.,* 393 Pa. Super. 386, 392-93, 574 A.2d 664, 667-68 (1990). (citations omitted)

The burden of establishing any agency relationship, including apparent authority, "rests with the party asserting the relationship." *Basile v. H & R Block Inc.,* 563 Pa. 359, 367-68, 761 A.2d 1115, 1120 (2000).

Given the evidence before the court it is difficult to see how a "person of ordinary prudence, diligence and discretion" could believe that the Nationwide agent was acting on behalf of Nationwide Mutual. The insurance application filed by the plaintiffs refers only to Nationwide Fire, and the policy declaration sheet states that the policy was issued by Nationwide Fire alone. Defendants' reply exhibit 4; stipulation exhibit A. Moreover, the only evidence the plaintiffs have presented to support their assertion of apparent authority is an affidavit of Mr. Peltz in which he states that he was an insured under a "Nationwide businessowner's insurance policy" covering the building. Plaintiffs' response exhibit 2 at ¶1. No other mention is made of Nationwide, Nationwide Mutual or Mr. Peltz' beliefs at the time the policy was applied for or issued. Without such supporting evidence, the plaintiffs have not provided evidence sufficient to sustain either their allegations of an agency relationship or their breach of contract claim against Fire. As such, the claim against Nationwide Mutual must be dismissed.

## CONCLUSION

The ACV option, as set forth in the policy, does not permit Nationwide to deduct depreciation from compensation for repairs in the event of a partial loss to a building, and the plaintiffs are entitled to summary judgment on their breach of contract claim against Nationwide Fire. The plaintiffs' claim against Nationwide Mutual, however, cannot be sustained and must be dismissed.

## ORDER

And now, August 13, 2001, upon consideration of the parties' motions for summary judgment in the above captioned matter, the respective memoranda, all other matters of record, and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered and decreed as follows:

(1) The plaintiffs' motion for summary judgment is granted in part and denied in part;

(2) The defendants' motion for summary judgment is granted in part and denied in part;

(3) Count I—breach of contract is dismissed as to defendant Nationwide Mutual Insurance Company only; and

(4) Judgment is entered in favor of the plaintiffs and against defendant Nationwide Mutual Fire Insurance Company only on Count I—breach of contract only.