518 A.2d 827

**Paul STALLO, Paula Stallo, for the Use of Paul Stallo, and Carl Neiper, for the Use of Paul Stallo, Appellees,**

**v.**

**INSURANCE PLACEMENT FACILITY OF PENNSYLVANIA, Appellant.**

Superior Court of Pennsylvania.

Argued May 6, 1986.

Filed Dec. 9, 1986.

158

David E. Heisler, Scranton, for appellant.

John T. McLane, Jr., Scranton, for appellees.

Before CIRILLO, President Judge, and WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

When the owner of a property in Lackawanna County purchased insurance under the Pennsylvania Fair Plan Act,[1] he caused his daughter to be listed as the named insured. In an action by father and daughter to recover indemnity for a fire loss, the insurer defended on the grounds that it had no contract with the father and that it was not required to pay the proceeds to the daughter because she had no insurable interest in the building and contents which had been destroyed by the fire. The claimants contended, however, that the broker who had placed the coverage had known fully the circumstances and, because he had been the agent of the insurer, the insurer should be estopped to assert such defenses. The case was submitted to the jury to determine the agency of the broker. The jury was not

1. Act of July 31, 1968, P.L. 738, No. 233, 40 P.S. § 1600.101 et seq.

otherwise asked to determine, nor did the trial court determine as a matter of law, the validity of the insurer's defenses. Following a verdict in favor of the claimants and a denial of the insurer's post-trial motions, the insurer appealed from the judgment entered on the verdict.

Paul Stallo was the owner of a pizza business. He conducted his business in a building which he leased from William and Marjorie Gilbert in Chinchilla, Lackawanna County.[2] In January, 1963, Stallo entered a long term agreement to buy the premises from the Gilberts. In the written agreement, however, Stallo was not named as buyer; instead, he caused the name of his nephew, Carl Neiper, to be inserted as the buyer. To protect Stallo, his attorney took and held in escrow a signed deed in which the name of the grantee had been left blank. From January, 1963, to April, 1973, the sellers paid the taxes and the costs of keeping the building insured. They were reimbursed for these amounts by Stallo, who simply added the taxes and costs of insurance to the monthly payments of principal and interest required by the agreement. Early in 1973, the insurance on the building was cancelled. Stallo then requested the purchase of other insurance from the Ferrario Insurance Agency, which, in turn, applied for coverage with the Insurance Placement Facility of Pennsylvania, hereinafter sometimes referred to as the "Fair Plan." Named as insureds in the application were the Gilberts and Paula Stallo, the daughter of Paul Stallo. The "Fair Plan" agreed to provide coverage, and a policy was issued as requested. In the fall of 1973, Stallo also purchased from Fair Plan a policy of insurance to cover the contents of the building. Named as insured in this policy was Paula Stallo. On February 16, 1978, while the foregoing policies of insurance were in effect, the building and its contents were destroyed by fire. When Stallo submitted a claim to Fair Plan,[3] the claim was denied because he was not an insured and be-

2. Stallo's living quarters were on the second floor.
3. After the fire had occurred, Stallo paid the moneys remaining due under the agreement of sale to the Gilberts.

cause his daughter, who was the named insured, did not have an insurable interest in the building or its contents.

In an action filed by Paul Stallo, Paula Stallo and Carl Neiper, the claimants contended that Fair Plan was estopped to deny liability to Paul Stallo because it knew that he was the real party in interest. The insurer had this knowledge, it was contended, because the relationship between Stallo and his daughter had been fully explained to Frank McManamon, an employee of the Ferrario Insurance Agency. The Ferrario Agency, it was contended, had been the agent of Fair Plan; and, therefore, McManamon's knowledge was to be imputed to the insurance company.

The Pennsylvania Fair Plan Act of July 31, 1968, P.L. 738, No. 233, 40 P.S. § 1600.101 et seq., was enacted to make insurance coverage available to protect property for which basic property insurance was not available through the normal insurance market. It was also intended to create a reinsurance arrangement whereby the responsibility for insuring such properties would be shared by all insurance companies doing business in the Commonwealth. See: Pennsylvania Fair Plan Act, *supra,* § 102, 40 P.S. § 1600.102. The plan was to be administered by an Industry Placement Facility according to the terms of the statute and also according to rules and regulations adopted by the Insurance Commissioner. If a property were insurable and the insured did not owe premiums on prior policies, the Placement Facility could require the issuance of a policy of basic property insurance by a member company. Pennsylvania Fair Plan Act, *supra,* § 203, 40 P.S. § 1600.203. One of the regulations adopted by the Commissioner established that no licensed broker would have authority to bind the Fair Plan.

In the instant case, the trial court refused to receive or consider this regulation and, of course, refused to instruct the jury regarding its meaning and effect. Instead, the court submitted to the jury for determination whether the broker was the agent of Stallo or the agent of Fair Plan with authority to bind the insurer by its knowledge that

Paul Stallo was the insured even though the policy had been written in the name of his daughter. In doing so, the trial court instructed the jury as follows:

"... if the defendant, Fair Plan, authorized the Ferrario Agency to deliver the insurance policies to the plaintiffs and/or to Mr. and Mrs. Gilbert, and for the Ferrario Agency to collect the premiums, then the Ferrario Agency can be considered the agent of Fair Plan."

We agree with appellant that this was an erroneous instruction. The effect of the error was to tell the jury that if the broker had been permitted by Fair Plan to receive the premiums and deliver the policy it thereby became the agent of the Fair Plan. If the broker were the agent of Fair Plan under these instructions, the jury was then permitted to conclude that Fair Plan was estopped to question contractual liability to Stallo.

The trial court's instructions were inadequate even under general principles of agency. The correct rule appears at *Sands v. Granite Mutual Insurance Co.*, 232 Pa.Super. 70, 78, 331 A.2d 711, 715–716 (1974), as follows:

"[W]here a broker holds himself out as general agent, solicits a policy, collects a premium a part of which he retains as his commission according to his custom, and a policy is issued upon information procured by him, he is an agent of the insurer by implication as to the insured who, in good faith, dealt with him as such." 3 Couch on Insurance 2d § 26:25 (1960).

See also: 18 P.L.E. *Insurance* § 34. Apparent authority results from conduct by a principal which causes a third person to believe that a person has authority to enter negotiations or make representations as his agent. See: *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 375, 246 A.2d 407, 410 (1968); *Friedman v. Kasser*, 332 Pa.Super. 475, 483, 481 A.2d 886, 890–891 (1984); *Apex Financial Corp. v. Decker*, 245 Pa.Super. 439, 443, 369 A.2d 483, 485 (1976); *Essington Enamel Co. v. Granite State Fire Insurance Co.*, 45 Pa.Super. 550, 558 (1911); *Gizzi v. Texaco, Inc.*, 437 F.2d 308, 309 (3rd Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct.

65, 30 L.Ed.2d 57 (1971); 18 P.L.E. *Insurance* § 34. See also: Restatement (Second) of Agency, § 8. If a third person changes his position in reasonable reliance on the principal's conduct, the principal is then estopped from denying the authority of the agent. See: *Friedman v. Kasser, supra; Essington Enamel Co. v. Granite State Fire Insurance Co., supra; Gizzi v. Texaco, Inc., supra;* 18 P.L.E. *Insurance* § 34. In the instant case, however, there was no evidence to show that the broker had been held out by Fair Plan to be its general agent. When a customer asks a broker to obtain insurance through the Pennsylvania Fair Plan, the customer has no reason to believe, in the absence of a representation to the contrary by Fair Plan, that the broker has become Fair Plan's agent.

■ The evidence in this case showed that Stallo had gone to the Ferrario Agency to purchase insurance. The broker, on Stallo's behalf, had submitted an application for property insurance to the Fair Plan Placement Facility, together with the necessary premium. The Placement Facility was thereupon required by statute to inspect the property and determine whether it was insurable and whether it was willing to write the insurance coverage. After it had agreed to do so, a policy was forwarded to the broker who had submitted the application. The broker then delivered the policy to the insured. Contrary to the trial court's jury instructions, these facts alone were insufficient to permit a finding that the Ferrario Agency was an agent of either the Placement Facility or the insurance company assuming the coverage.

Although the trial court told the jury about the insurer's defense, i.e., that it had not contracted with Paul Stallo and that Paula Stallo lacked an insurable interest in the property, the validity of these defenses was not submitted to the jury for determination. The term "insurable interest" was never defined for the jury. Moreover, the trial court did not determine as a matter of law or submit to the jury for determination whether a "straw party" insured or a named insured who was acting for an undisclosed principal could have an interest in the property sufficient to purchase

insurance and recover the proceeds of the policy when the property was destroyed by fire. Rather, the inquiry of the jury was limited to a determination of whether the broker was the agent of the Fair Plan and, if so, whether Fair Plan was estopped to raise any defense. Unfortunately, the trial court's jury instructions regarding agency and estoppel were incorrect. Because it appears likely that the jury based its verdict on the court's erroneous instructions, a new trial must be granted. See: *Jones v. Montefiore Hospital*, 494 Pa. 410, 420, 431 A.2d 920, 925 (1981); *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 382, 492 A.2d 1382, 1386 (1985).

■ We also agree with Fair Plan's contention that it was error for the trial court to exclude evidence of the Insurance Commissioner's regulation that brokers could have no authority to act on behalf of the Fair Plan. A similar issue was discussed in *American Life Insurance & Trust Co. v. Shultz*, 82 Pa. 46, 51 (1876), where the Supreme Court said:

[I]t was manifest error to exclude an inquiry as to the powers of Mr. Geiger, the agent with whom the plaintiff contracted. His acts could only bind the company within the scope of his authority, hence proof of his authority was material even for the plaintiff. The burden of proof lies on him to establish the agency and the extent of it: *Hays v. Lynn*, 7 Watts 525. The plaintiff having given some evidence to show that Geiger was agent for the company, but without any definite or accurate statement of his powers, it was clearly competent for the company to show what his powers were; or that he had exceeded his authority, or to deny the agency itself. The extent of an agent's powers depends upon the authority under which he acts. This may be shown by his written instructions or his course of dealing. It is true the public are not always bound by the private instructions of the agent; and may hold the principal responsible, though the particular acts done are in excess of his private instructions. This was asserted in *Adams Express Co. v. Schlessinger*, 25 P.F. Smith [Pa.] 246. It applies to cases where the

agent has been held out to the world as such by the principal, allowed to exercise enlarged powers from time to time, and his acts therein have been ratified by his principal. But this doctrine in no sense conflicts with the right of the principal to show that his agent in a given case exceeded his authority. The effect of such evidence when received is for the jury.

Upon a retrial, the court may wish to examine more fully the issues of insurable interest [4] and the effect of causing a "straw party" to be listed as the named insured in a policy of fire insurance. This will require a determination of the validity or invalidity of the defenses asserted by the insurer. Because these issues have not heretofore been determined by the trial court, we refrain from expressing an opinion with respect thereto.

However, upon retrial the amount of damages recoverable will again be in issue. Therefore, we consider appellant's contention that the trial court's charge on damages was erroneous. Specifically, appellant contends that the court erred when it failed to instruct the jury that recovery should be limited to actual cost of replacement less depreciation. The terms of the policy called for a right of recovery, in the event of loss, of the lesser of the actual cash value of the property, including depreciation, or the cost of replacing and/or repairing the property. Stallo testified at trial that, in his opinion, the property was worth $80,000.00 immediately prior to the fire. Both parties also submitted estimates of replacement costs, which did not take into account depreciation. Stallo's estimate was $70,100.00; Fair Plan's estimate was for $62,439.48. At the close of the trial, Fair Plan requested the court to instruct the jury that Stallo could recover only the actual cash value of the property, ascertained with proper consideration for depreciation, but not exceeding the amount which it would cost to repair or replace the property. The trial court denied Fair Plan's request and charged the jury that the actual cash

4. See: *Luchansky v. The Farmers Fire Insurance Co.,* 357 Pa.Super. 136, 515 A.2d 598 (1986).

value in the instant case was equivalent to the cost of repairing or replacing the property. Fair Plan contends that this was error.

■ The sole evidence in regard to the value of the building at the time of the fire was Stallo's testimony that the building had an estimated value of $80,000.00. Fair Plan offered no evidence to show that the actual value of the property was less than Stallo's estimate. Thus, the estimated cost of replacing the building was clearly less than the actual cash value. Under the terms of the policy, Stallo's damages under these circumstances were to be measured by the cost of replacement.[5] The jury returned a verdict for $71,708.00. Therefore, even though the trial court erred when it equated actual cash value with the cost of replacement, the error was harmless. Upon a retrial, however, the erroneous instruction should be corrected.

Appellant also contends that the trial court erred (1) when it permitted plaintiff's counsel to suggest to the jurors that they rely on their own experiences in dealing with insurance companies, and (2) when it refused to allow cross-examination of the plaintiff regarding a prior inconsistent statement.

The first of these issues has not been adequately preserved for appellate review. The closing arguments have not been recorded; and, therefore, we are unable to review fully the nature or potential effect of the remarks made by counsel.

Evidence of a prior inconsistent statement was refused by the trial court on grounds that appellant was unable to prove that a transcript of the statement had been a part of the file which appellant gave to appellee's counsel prior to trial. The law was stated in *Crance v. Sohanic*, 344 Pa.Super. 526, 496 A.2d 1230 (1985) as follows:

5. Fair Plan argued to the trial court that the cost of replacing the property should have been reduced to reflect depreciation. This argument was rejected by the Supreme Court in *Farber v. Perkiomen Mutual Insurance Co.*, 370 Pa. 480, 88 A.2d 776 (1952).

Whether to bar evidence which has not been produced after a discovery order is a matter left with the trial judge's discretion. *Pompa v. Hojancki,* 445 Pa. 42, 281 A.2d 886 (1971). Sanctions may be imposed where there is willful disregard of or disobedience to a discovery order, or an obligation stated in the rules of civil procedure. *Lapp v. Titus,* 224 Pa.Super. 150, 302 A.2d 366 (1973). The federal courts, in holding on their discovery rules, have held that gross negligence in fulfilling discovery requests is grounds for an order barring use of evidence. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Picture Corp.,* 602 F.2d 1062 (2nd Cir. 1979).

*Id.,* 344 Pa.Superior Ct. at 530, 496 A.2d at 1232–1233. Although we are unable to perceive an abuse of discretion in the trial court's ruling, we observe that given the dispute over whether a discovery violation did in fact occur and given the fact that Stallo now has notice of the statement, there would be no reason for penalizing Fair Plan by depriving it of the use of this evidence, if relevant, upon a retrial.

Judgment reversed and case remanded for new trial.