531 A.2d 568

Andrew A. Lang, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Commissioner, Insurance Department of Pennsylvania, Respondent.

480

Argued May 19, 1987, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Alan Berman,* for petitioner.

*Arthur Selikoff,* Assistant Counsel, with him, *Linda J. Wells,* Chief of Litigation and *M. Hannah Leavitt,* Chief Counsel, for respondent.

*Robert B. Brown, Jr.,* for intervenor, The Insurance Placement Facility of Pennsylvania.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., September 22, 1987:

The Insurance Placement Facility of Pennsylvania (Facility)[1] declined to issue insurance coverage to four

---

[1] The Facility was established pursuant to the Pennsylvania Fair Plan Act, Act of July 31, 1968, P.L. 738, *as amended,* 40 P.S. §§1600.101—1600.502. The Facility is an intervenor in this matter.

properties owned by Andrew J. Lang, Jr., in Allegheny County. The Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner) upheld this determination. Lang appeals; we affirm.

Lang's properties were denied coverage pursuant to Rule II(B)(1) of the Facility's General Rules and Manual of Procedures which prohibits coverage to "[a]ny person who has been convicted of . . . arson."[2] In September 1975 Lang had been convicted of arson.

The issue before this Court is whether the Commissioner exceeded the scope of the enabling provisions of the Fair Plan Act in promulgating Rule II(B)(1). Specifically, Lang contends that the Fair Plan Act permits insurers only to review *physical* characteristics of a property and not the *personal* history of an owner.

Our scope of review of an Insurance Commissioner order is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or the findings of fact were not supported by substantial evidence. *Komada v. Browne,* 97 Pa. Commonwealth Ct. 19, 508 A.2d 1284 (1986).

The declared purposes of the Fair Plan Act are found in Section 102,[3] which states, in pertinent part:

(1)  To encourage stability in the property insurance market for property located in urban areas of this Commonwealth;

. . . .

(3)  To encourage the improvement of the condition of properties located in urban areas of

---

[2] Section II(B)(1) reads in its entirety:

**B.  INELIGIBLE APPLICANT**

(1)  Any person who has been convicted of or has an outstanding indictment for the crime of arson or any crime involving a purpose to defraud an insurance company.

[3] 40 P.S. §1600.102.

this Commonwealth and to further orderly Community development generally;

(4) To provide for the formulation and administration by an Industry Placement Facility of a plan assuring fair access to insurance requirements (Fair Plan) in order that *no property shall be denied basic property insurance through the normal insurance market provided by the private property insurance industry except after a physical inspection of such property and a fair evaluation of its individual underwriting characteristics.*

(Emphasis added.) Thus, Section 102(4) requires the Facility to insure an urban property unless physical inspection or review of the individual underwriting characteristics reveals unwarranted risks.

The Commissioner interpreted the phrase "individual underwriting characteristics" as authorizing the promulgation of Rule II(B)(1). Lang concedes that the practice of an insurance company reviewing a property owner's personal history before entering into a contract was, and in some areas still is, a permitted action in the industry. *See Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 76 A.2d 828 (1950) *rev'd on other grounds, Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983). However, he asserts that the Fair Plan Act restricts facility review to a property's physical characteristics. Lang refers to Section 204 of the Fair Plan Act,[4] which reads:

If the Facility finds that the property is not insurable, it shall promptly supply to the applicant a written statement setting forth the features or conditions of the property which prevent it from constituting an insurable risk

---

[4] 40 P.S. §204.

and the measures, if any, which if taken would make the property an insurable risk.

Our review of the provisions of the Fair Plan Act reveals a legislative intent recognizing the need for insuring properties in blighted urban areas and a need for the insurance industry to work together and share equally in the inherent risks of such policy writing. We believe that the legislature, in permitting the Facility to adopt, subject to Commissioner approval, its own operation plan containing *reasonable underwriting standards* determined that insurers could look to pertinent, certified personal history events which they, in their regular course of business, reviewed as qualifications necessary for acceptance. Section 201(2)(c).[5]

We hold that the Commissioner properly concluded that Rule II(B)(1) is a valid exercise of the Facility's underwriting authority.

Affirmed.

### ORDER

The order of the Insurance Commissioner of the Commonwealth of Pennsylvania, Docket No. M86-1-28 dated July 10, 1986, is affirmed.

---

[5] 40 P.S. §1600.201(2)(c).