**Barry BUSCH, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2006.

Decided June 2, 2006.

---

Barry Busch, appellant, pro se.

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

■ This case was transferred from the Superior Court to this Court for disposition. It involves a *pro se* appeal from a one-year suspension of Barry Busch's (Busch) driving privilege by the Department of Transportation's Bureau of Driver Licensing (DOT). The Court of Common Pleas of Delaware County dismissed Busch's appeal below on the ground that Busch was found to have violated the Implied Consent Law.[1] We affirm.[2]

On May 11, 2002, Officer Daly of the Chester Township Police sent a message via police radio to Patrolman Smith of Brookhaven, stating that he was attempting to stop a vehicle fleeing a McDonald's parking lot. Patrolman Smith responded to the scene and found that Officer Daly had stopped a vehicle matching the description of the vehicle he had been pursuing. The car was stopped in the area of West Brookhaven Township and Chandler Drive. At the time of Patrolman Smith's arrival, Busch was already out of the car, standing by the rear of the vehicle. Patrolman Smith noticed that Busch had bloodshot eyes, smelled of alcohol, and seemed unsteady on his feet. Patrolman Smith then questioned Busch about whether he had been drinking or smoking narcotics. Busch responded that he had smoked a marijuana cigarette the night before. Patrolman Smith testified that he then asked Busch to perform field sobriety

tests twice and that Busch did not answer. However, Busch claims that he was never asked to perform field sobriety testing and that he requested to take a breath test but was refused. In any event, Busch was then placed under arrest based on the officer's visual observations and the erratic driving that Officer Daly had described over the radio.

Patrolman Smith also testified that upon searching Busch's person for weapons following his arrest, the officer found what appeared to be a rolled marijuana cigarette in Busch's shirt pocket. Patrolman Smith testified that lab tests later confirmed that the substance was indeed marijuana. Additionally, Patrolman Smith obtained Busch's consent to search the vehicle. Inside the vehicle, Patrolman Smith found what he suspected to be a crack cocaine pipe in the center console.[3] Patrolman Smith then placed Busch in the patrol car of another officer who had arrived on the scene, Officer Mugler. Patrolman Smith instructed Officer Mugler to take Busch to Riddle Memorial Hospital for blood testing.

The record reflects different versions of what happened next, but the essential fact is undisputed. Busch, according to Officer Mugler and his own brief, refused to submit to a blood test on the ground that the government had no right to his body. Indeed, Busch admits to repeatedly refusing blood testing.[4] Busch also claims he was

---

1. Vehicle Code—75 Pa.C.S. §§ 101–9805; Implied Consent Law—75 Pa.C.S. § 1547(b).

2. This Court's standard of review is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Finnegan v. Department of Transportation, Bureau of Driver Licensing*, 844 A.2d 645 (Pa.Cmwlth. 2004).

3. In his brief, Busch refers to what the police described as a crack cocaine pipe as an "old glass stem." Appellant's Brief, p. III.

4. "Upon passing the police station street, Appellant [Busch] asked why they [the police officers] did not turn and was informed he was being taken to the hospital for a blood test. He immediately said he refused to give blood. The entire trip to hospital [*sic*] about 15 minutes the officers badgered, coerced, and attempted to get him [Busch] to change

not told he would be taken to the hospital at the time of his arrest. He claims that the officers tried to force him to give blood once at the hospital by forcibly placing him in a chair while a nurse attempted to raise his sleeve. To the contrary, Officer Mugler testified that once at the hospital, he informed Busch of the consequences of refusal to submit to testing. Busch refused testing. Busch was then taken to the police station for booking. At the police station Officer Mugler also read the official warning to Busch relating that refusal to submit to testing would result in the suspension of his driving privilege. Busch again refused. Busch also signed the warning form[5] and included his reason for refusal.[6] On June 4, 2002, DOT mailed an official notice to Busch informing him that his operating privilege was suspended for one year, effective July 9, 2002, because of his refusal to submit to blood testing. Busch appealed DOT's determination.

▮▮▮ In order to maintain a license suspension under the Implied Consent Law, Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b), DOT must establish that the driver (1) was arrested for driving under the influence, (2) was asked to submit to testing, (3) refused to do so, and (4) was specifically warned that a refusal would result in the suspension of his operating privilege. *Postgate v. Department of Transportation, Bureau of Driver Licensing,* 781 A.2d 276 (Pa.Cmwlth.2001), *petition for allowance of appeal denied,* 568 Pa. 689, 796 A.2d 320 (2002). Failure to complete a test is a refusal unless explained by competent medical evidence.

*Pappas v. Department of Transportation, Bureau of Driver Licensing,* 669 A.2d 504 (Pa.Cmwlth.1996).

On November 29, 2002, at his *de novo* hearing before the Honorable Robert A. Wright of the Common Pleas Court of Delaware County, Busch contested his operating privilege suspension. He offered his version of events and the officers offered theirs on behalf of DOT. Senior Judge Wright found that DOT satisfied the relevant burden of proof and that Busch failed to offer legal justification for his refusal.[7]

Now Busch raises four issues before the Court. DOT's counter-argument to each is the same. DOT argues that Busch waived each of his four arguments by not raising them before the common pleas court or in his statement of matters complained of on appeal. For that reason, the Court will briefly restate Busch's arguments and address them all at once.

First, Busch claims that the Commonwealth's driver licensing law is unconstitutional. He claims that the General Assembly in 1919 actually intended to create an identification system under the guise of requiring drivers of automobiles to obtain licenses. According to Busch, this subterfuge was a political necessity because the specter of Communism hung too heavily over State identification systems and the people would not accept such a system.

Second, Busch argues that he has an inherent right to operate a motor vehicle in the Commonwealth. This argument is

---

his mind. He steadfastly, constantly repeated that he refused." Appellant's Brief, p. III.

5. Form DL–26.

6. Busch wrote on the DL–26 form as follows: "Object cause [*sic*] I never gave government property rights to my body. My body is my

personal [*sic*] property not government property."

7. Opinion of Court of Common Pleas of Delaware County, p. 2. The opinion was written by the Honorable Edward J. Zetusky, Jr. after reassignment due to Senior Judge Wright's retirement.

based upon what he terms as his "inherent right to the use of the most common form of mobility of [his] time." [8]

Third, he claims to have entered into a contract with the Commonwealth when his application for a driver's license was accepted in 1966, prior to the enactment of the current Implied Consent Law. That contract according to Busch did not include the current provisions on the Implied Consent Law, which was not enacted until 1976 when the General Assembly enacted a new Vehicle Code. Therefore, Busch does not believe the current law can be applied to him.

Finally, Busch argues that he was improperly prevented from introducing the record from his criminal DUI proceeding into the record of his civil operating privilege suspension appeal. Busch's intention was to use this record to impeach the credibility of the police officers who testified on DOT's behalf.

■■■ As a matter of law, DOT is correct. Busch's failure to raise these issues before the court below or in his statement of matters complained of on appeal effectively waived each of his arguments. Issues are considered waived when no 1925(b) statement is filed or when an issue is not included in a filed statement. *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484 (Pa. Cmwlth.), *petitions for allowance of appeal denied*, 579 Pa. 694, 856 A.2d 835 and 579 Pa. 705, 857 A.2d 680(2004). This Court may not consider such issues on appeal. The Court is an appellate body and is not empowered to conduct a new trial based on issues that were not raised below. To do so would not only exceed our authority, but it would also prejudice opposing parties. In reference to Busch's last issue, the Court also notes that Busch admits the

following: (1) the officers requested a blood test; (2) after Busch was arrested for DUI; (3) Busch refused to submit to testing; and (4) he does not dispute signing the Implied Consent Form DL–26 informing him that refusal will result in a one-year suspension of his operating privilege. Any doubt Busch could cast on the officers' veracity would be irrelevant to these proceedings as Busch has either admitted or failed to dispute every element DOT needed to carry its burden of proof.

■■■ In conclusion, the Court acknowledges that Busch recently filed a Motion for Reconsideration of this Court's order denying him an extension of time to file a reply brief for the third time. Pursuant to the Pennsylvania Rules of Appellate Procedure, the reply brief was due 14 days after the filing of DOT's brief, which was filed roughly 5 *months* ago on January 11, 2006. Pa. R.A.P. 2185. The Court notes from the docket that Busch was granted 19 extensions before he filed his initial brief with the Court. The Court also notes that Busch's 58–page reply brief more than doubles the 25–page allowable length of a reply brief. Pa. R.A.P. 2135(a)(2). The Court understands that Busch is in poor health and has chosen to represent himself in this appeal although he has no legal background. While the Court has attempted to accommodate Busch, those accommodations can only go so far before they result in unfairness to the opposing party. The Court's rules apply to lawyers and non-lawyers alike.

Accordingly, the order of the common pleas court is affirmed.

### *O R D E R*

AND NOW, this 2nd day of June 2006, the order of the Court of Common Pleas of

---

8. Appellant's Brief, p. 18.

Delaware County in the above-captioned matter is AFFIRMED.

Appellant Barry Busch's Motion for Reconsideration of the Court's order denying an extension of time in which to file a reply brief is DENIED.