Gary RICHARDSON, Petitioner

v.

**PENNSYLVANIA INSURANCE DEPARTMENT,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 10, 2012.

Decided Sept. 12, 2012.

Gary Richardson, pro se.

W. Christopher C. Doane, Department Counsel, Harrisburg, for respondent.

Katherine A. Lowery, Pittsburgh, for intervenor Insurance Placement Facility of Pennsylvania.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Gary Richardson (Richardson), pro se, petitions for review of the Pennsylvania Insurance Department Commissioner's (Department) March 17, 2011 adjudication and order affirming the Insurance Placement Facility of Pennsylvania's (Fair Plan) cancellation of Richardson's insurance policy pursuant to The Pennsylvania Fair Plan Act (Fair Plan Act).[1] There are three issues before this Court: (1) whether Richardson's appeal should be quashed because his amended brief fails to comply with the Pennsylvania Rules of Appellate Procedure; (2) whether the Department erred by finding that Fair Plan properly cancelled Richardson's provisional property insurance coverage; and (3) whether Richardson's civil rights were violated by the Department's failure to accept all of his evidence. We affirm.

On August 4, 2010, Richardson applied to Fair Plan for insurance of his residence located at 24212 North Center Road, Springboro, Crawford County, Pennsylvania.[2] On the application, Richardson denied that there was "any existing property damage." Notes of Testimony, February 11, 2011 (N.T.), Ex. F–1 at 2. On August 11, 2010, Fair Plan issued Richardson a property insurance policy, accompanied by a notice that stated, in pertinent part:

> This policy is marked 'provisional,' which means this property will be scheduled for an interior inspection. The inspection is part of our loss control efforts and to ensure that your policy is properly rated.
>
> In the next week or so, the inspector will attempt to contact you to arrange a convenient time . . . to inspect the property
>
> . . . .
>
> If any hazards are found during the inspection, it may result in this policy costing more. You can prevent or eliminate any additional charges or cancellation of the policy, if the hazards are corrected and we are notified. A reinspection may be necessary.

N.T., Ex. F–2 at 1.

Richardson's property was inspected on August 25, 2010. In the inspection report,

---

**1.** Act of July 31, 1968, P.L. 738, *as amended*, 40 P.S. §§ 1600.101–1600.502.

**2.** According to Section 201(a) of the Fair Plan Act, 40 P.S. § 1600.201(a), as a condition of insurers' authority to write basic property and homeowners insurance policies in the Commonwealth, they must participate with Fair Plan.

> The [Fair Plan Act] was enacted to make insurance coverage available to protect property for which basic property insurance was not available through the normal insurance market. It was also intended to create a reinsurance arrangement whereby the responsibility for insuring such properties would be shared by all insurance companies doing business in the Commonwealth. *See* [Section 102 of the Fair Plan Act, 40 P.S. § 1600.102]. The plan was to be administered by an Industry Placement Facility according to the terms of the statute and also according to rules and regulations adopted by the Insurance Commissioner. If a property were insurable and the insured did not owe premiums on prior policies, the Placement Facility could require the issuance of a policy of basic property insurance by a member company. [Section 203 of the Fair Plan Act, 40 P.S. § 1600.203].
>
> *Stallo v. Ins. Placement Facility of Pennsylvania*, 359 Pa.Super. 157, 518 A.2d 827, 829 (1986).

the inspector marked, "Other Hazardous Conditions," and commented, "[Richardson] is doing work on [an] as he goes basis. . . . Rear porch area is collapsing and he plans to repair it soon." N.T., Ex. F–3 at 2. On September 22, 2010, Fair Plan issued a notice of declination, which stated:

> The Fair Plan cannot continue to provide coverage for this property unless the following is corrected:
>
> 1–Rear Porch Roof Collapsed
>
> The Fair Plan will mail notice of cancellation for this policy unless the conditions mentioned above are corrected and the Fair Plan notified before 10/12/10[.] Please provide copies of paid bills or other evidence to confirm that the work to correct the conditions has been done.

N.T., Ex. F–5. The notice provided the toll-free telephone number for Fair Plan, in case Richardson had any questions. Because it received no response, on October 22, 2010, Fair Plan issued a notice cancelling Richardson's policy effective at 12:01 p.m., November 27, 2010 because "[t]he property does not meet the following underwriting standards—rear porch roof collapsed." N.T., Ex. F–6.

By November 8, 2010 letter, Richardson requested that his home remain insured because his intended porch repairs were put on hold due to an ongoing criminal investigation.[3] By November 15, 2010 letter, Angela Michaels, an investigator for the Department's Bureau of Consumer Services (BCS), notified Fair Plan that BCS received a complaint from Richardson

regarding its cancellation of his Fair Plan policy.[4] By November 18, 2010 letter, a Fair Plan underwriter notified Ms. Michaels that Fair Plan cancelled the policy because it received no response to its September 22nd notice of declination. In a November 22, 2010 investigative report, Ms. Michaels notified Richardson that BCS reviewed Fair Plan's termination of his policy, and stated:

> **The cancellation notice was issued because there was no response from you or your broker [to the September 22, 2010 notice of declination] within the allotted time. Our investigation has determined that the company met the requirements of Act 205 and the [Department] therefore finds that your policy may be terminated. Please note that your residential . . . property coverage will terminate on 11/27/10. Therefore, you are encouraged to secure alternative coverage promptly.**

N.T., Ex. F–9 at 1–2. By letter faxed to Ms. Michaels on December 3, 2010, Richardson requested a hearing regarding his policy cancellation. On December 24, 2010, Richardson's home was destroyed by fire that was unrelated to the porch's condition. Richardson subsequently submitted a complaint form[5] to the Department related to Fair Plan's cancellation of his policy, stating:

> I was in contact with Angela Michaels and [Fair Plan representative] Paul Smolinski at the Fair Plan re reinstatement of my policy. I spoke to them on many occasions in November and De-

---

3. Throughout his testimony at the hearing and in his brief, Richardson references an ongoing state and federal criminal investigation related to conspiracy and corruption in Crawford County that has led to deaths, civil lawsuits and criminal charges against certain entities.

4. Although the recipient is not specified, Richardson's November 8, 2010 letter appears to be the "complaint" that triggered Ms. Michael's November 15, 2010 letter.

5. The complaint form is undated; however, the date printed on its bottom left corner is "1/26/2011."

cember. I faxed a letter requesting an extension/reinstatement on Dec 1, 2010. Mr. Smolinski told me that he will check with claims and get back to me. I never heard from him. I called back and left voice mail with no response. Subsequently on 12/24/2010 my house burned to the ground.

N.T., Ex. R–7.

■ Following a hearing at which Richardson and Mr. Smolinski testified, the Department affirmed Fair Plan's termination of Richardson's policy on the basis that it was cancelled in accordance with the Fair Plan Act and Fair Plan's rules and procedures. Richardson requested reconsideration, which the Department denied. Richardson appealed to this Court.[6] Fair Plan intervened.

Preliminarily, we will address the Department and Fair Plan's arguments that Richardson's appeal should be quashed because his amended brief fails to comply with the Pennsylvania Rules of Appellate Procedure. They specifically contend that meaningful appellate review is precluded because the amended brief fails to: address any standard or scope of review, concisely state the questions involved and how the Department addressed them, include an argument section or citation to any legal authority; the statement of the case merely contains argument; the summary of argument contains five pages of less than succinct argument; and, instead of referencing and containing the Department's March 17, 2011 adjudication and order, it references and contains the order and decision denying Richardson's request for reconsideration.

■ Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 2101 states:

Briefs … shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief … of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.

Pa. R.A.P. 2111 requires, in relevant part:

(a) **General rule.**—The brief of the appellant, except as otherwise prescribed by these rules, shall consist of the following matters, separately and distinctly entitled and in the following order:

(1) Statement of jurisdiction.

(2) Order or other determination in question.

(3) Statement of both the scope of review and the standard of review.

(4) Statement of the questions involved.

(5) Statement of the case.

(6) Summary of argument.

(7) Statement of the reasons to allow an appeal to challenge the discretionary aspects of a sentence, if applicable.

(8) Argument for appellant.

---

6. This Court's scope of review of a Department order upholding a Fair Plan determination is limited to determining whether findings of fact were supported by substantial evidence, an error of law was committed, or constitutional rights were violated. *Lang v. Dep't of Ins.*, 109 Pa.Cmwlth. 479, 531 A.2d 568 (1987).

By this Court's August 8, 2011 order, Richardson was granted leave to proceed in forma pauperis. On August 15, 2011, his first request for extension to file his brief was grant-

ed. A request for refund of Richardson's filing fee was denied. On September 23, 2011, his second request for extension was granted. On November 2, 2011, his third request for extension was granted, with the admonishment that no additional extension would be granted. Richardson filed a brief; however, because it did not comply with the Pennsylvania Rules of Appellate Procedure, on November 29, 2011, he was ordered to file an amended brief. He filed his amended brief on December 27, 2011.

(9) A short conclusion stating the precise relief sought.

(10) The opinions and pleadings specified in Subdivisions (b) and (c) of this rule.

. . . .

**(b) Opinions below.**—There shall be appended to the brief a copy of any opinions delivered by any court or other government unit below relating to the order or other determination under review, if pertinent to the questions involved. If an opinion has been reported, that fact and the appropriate citation shall also be set forth.

This Court has held that, because it

does not have the same opportunity as a trial court to hear testimony from witnesses and to weigh the credibility of those witnesses ... the Pennsylvania Rules of Appellate Procedure exist to ensure that litigants present appeals of sufficient clarity to allow appellate courts to evaluate those appeals with the benefit only of the record below.

*Daly v. Unemployment Comp. Bd. of Review,* 158 Pa.Cmwlth. 130, 631 A.2d 720, 722 (1993). We acknowledge that the rules pertaining to the form and content of appellate briefs are mandatory. *Lal v. Dep't of Transp.,* 755 A.2d 48 (Pa.Cmwlth. 2000). They also "apply to lawyers and non-lawyers alike." *Busch v. Dep't of Transp., Bureau of Driver Licensing,* 900 A.2d 992, 996 (Pa.Cmwlth.2006). However, when it comes to compliance with the Pennsylvania Rules of Appellate Procedure, "this Court is generally inclined to construe *pro se* filings liberally." *Smithley v. Unemployment Comp. Bd. of Review,* 8 A.3d 1027, 1029–30 n. 6 (Pa. Cmwlth.2010).

Richardson's first brief was returned to him with an order in which this Court notified him that it lacked:

a. a table of contents or citations as required by Pa.R.A.P. 2174;

b. statement of jurisdiction as required by Pa.R.A.P. 2111(a)(1);

c. a copy of the order or other determination in question as required by Pa.R.A.P. 2111(a)(2);

d. a statement of the scope of review and standard of review as required by Pa.R.A.P. 2111(a)(3);

e. a statement of questions involved as required by Pa.R.A.P. 2111(a)(4);

f. a statement of the case as required by Pa.R.A.P. 2111(a)(5);

g. any summary of argument as required by Pa.R.A.P. 2111(a)(6);

h. any conclusion stating the relief sought as required by Pa.R.A.P. 2111(a)(9);

i. a copy of the opinion or adjudication of the trial court/administrative agency as required by Pa.R.A.P. 2111(a)(10); and

j. a certificate of service as required by Pa.R.A.P. 121, 122.

Per Curiam Order, November 29, 2011. Richardson filed the amended brief, which contained as ordered: (a) a table of contents; (b) a statement of jurisdiction; (e) a statement of questions expressing that Fair Plan did not follow proper procedures; (h) a conclusion with relief sought; and (j) a certificate of service. However, the amended brief also erroneously contained (corresponding to references in this Court's order): (d) a heading without an actual statement as to the standard or scope of review; (f) a statement of the case that contained argument rather than reference to how the issues were raised and preserved; (g) a less than concise summary of argument that exceeded two pages; and, (c), (i) reference to and a copy of an order *other than* the March 17th

order at issue.[7] The brief did not contain an argument section. There is no question that Richardson's amended brief fails to comply with the Pennsylvania Rules of Appellate Procedure.

 "[T]his Court has held that any party to an appeal before [it] who fails to strictly comply with all provisions of the Pennsylvania Rules of Appellate Procedure ... is in peril of having its appeal dismissed; nevertheless, the Court will consider the defect and whether meaningful review has been precluded." *Union Twp. v. Ethan Michael, Inc.*, 979 A.2d 431, 436 (Pa.Cmwlth.2009). Thus, this Court may waive even "egregious violations" of the appellate rules when the errors "do not substantially interfere with our review of the appellate record." *Seltzer v. Dep't of Educ.*, 782 A.2d 48, 53 (Pa.Cmwlth.2001). This Court has deemed meaningful review of the merits possible when it could discern a pro se appellant's argument, or where the interests of justice require it. *See Woods v. Office of Open Records*, 998 A.2d 665 (Pa.Cmwlth.2010); *Russell v. Unemployment Comp. Bd. of Review*, 812 A.2d 780 (Pa.Cmwlth.2002); *Dear v. Pennsylvania Bd. of Prob. & Parole*, 686 A.2d 423 (Pa.Cmwlth.1996); *Hempfield Twp. v. Hapchuk*, 153 Pa.Cmwlth. 173, 620 A.2d 668 (1993); *Thomas v. APSCUF*, 101 Pa. Cmwlth. 174, 485 A.2d 903 (1985). Moreover, we can limit our review to those cognizable arguments we can glean despite the brief's noncompliance. *See Woods; Commonwealth v. Adams*, 882 A.2d 496 (Pa.Super.2005).

 In his petition for review, Richardson specifically states that (1) Fair Plan's underwriting standards were unclear, and (2) his rights were violated because some of his evidence was denied by the hearing examiner.[8] In the amended brief's summary of argument, Richardson claims that his evidence was not accepted at the hearing. In the amended brief's statement of questions involved, statement of the case, summary of argument, and relief sought portions of his amended brief, Richardson specifically states that Fair Plan made mistakes and did not comply with the Unfair Insurance Practices Act (Act 205).[9] Although Richardson takes issue with Fair Plan's underwriting standards in the petition for review, and Act 205 in his brief, he is nevertheless challenging his policy termination. Both Fair Plan's underwriting standards and Act 205 specify insurance policy cancellation procedures. Despite the fact that Act 205 differs from and is not applicable to Fair Plan, BCS and the Department referenced Act 205 in their exchanges with Richardson, which could have led him to believe that Act 205 applied.[10] Looking beyond Richardson's ref-

---

7. In his petition for review, however, Richardson makes clear that this appeal is from the March 17, 2011 order.

8. Richardson also stated in his petition for review that he was entitled to a refund of his appeal costs, and that he will attend the appeal before this Court. Because this Court has already denied his request for a refund, and this matter has been submitted on briefs, these two additional objections will not be further addressed.

9. July 22, 1974, P.L. 589, *as amended*, 40 P.S. §§ 1171.1–1171.15. Act 205 regulates insur-

ance termination for owner-occupied private residential properties.

10. At the hearing and in his brief, Richardson referred to Act 205's policy cancellation requirements when making his case that Fair Plan improperly terminated his policy. Ms. Michael's November 22, 2010 letter to Richardson refers to Act 205. The Department also referred to Act 205 at the hearing, and in its decision when it cited certain Department cases. *See* N.T. at 7, 49, 68. Department Adjudication and Order at n.3. Act 205 does not regulate Fair Plan coverage. The Department acknowledged in its adjudication that "Act 205's termination provisions differ from

erence to Act 205, we can infer that, in addition to challenging the hearing officer's failure to accept all of his evidence at the hearing, Richardson is arguing that Fair Plan improperly cancelled his insurance coverage. Because these issues were raised in his petition for review and/or were fairly suggested thereby, and are argued in his amended brief, meaningful review is not precluded, and we will consider them. With regard to Richardson's first argument, we disagree that the Department erred by affirming Fair Plan's cancellation of his policy. Fair Plan is governed by the Fair Plan Act and Fair Plan's rules and regulations that have been approved by the Department. *See* Sections 201(b)-(c) and 205 of the Fair Plan Act, 40 P.S. §§ 1600.201(b)-(c), 205. The General Assembly did not require that Fair Plan insure every property for which coverage is sought. Section 201(b)(1) of the Fair Plan Act, 40 P.S. § 1600.201(b)(1), states that Fair Plan's purpose includes "that no property . . . shall be denied basic property insurance . . . except after a physical inspection of such property and a fair evaluation of its individual underwriting characteristics. . . ." Section 202(1) of the Fair Plan Act, 40 P.S. § 1600.202(1), likewise provides that "[n]o . . . risk shall be written at surcharged rates or be denied insurance coverage for basic property insurance by an insurer unless such an inspection has first been made." In accordance with Section 202(1)-(3) of the Fair Plan Act, 40 P.S. § 1600.202(1)-(3), participating insurers ask Fair Plan to conduct an inspection.

■ Section 202(4) of the Fair Plan Act provides that, once an inspection takes place, the insurer

shall promptly determine if the risk meets reasonable underwriting standards at the applicable premium rate, including approved surcharges for physical characteristics, and shall promptly return to the Industry Placement Facility the inspection report and provide an action report setting forth:

. . . .

(ii) the amount of coverage it agrees to write if certain improvements to the property specified in the action report are made; or

(iii) the specific reasons for which it declines to write coverage. The inspection report and the action report shall be kept on file with the Facility.

If the insurer . . . agrees to write it on condition that the property be improved as specified, the insurer shall, at the time of returning the inspection and action reports to the Facility, send a copy of both reports to the applicant for insurance. The insurer shall advise the applicant at the time of sending the reports to him of his right to appeal such determination to the commissioner and shall advise the applicant of the means by which to initiate such an appeal.

. . . .

40 P.S. § 1600.202(4). Section 204 of the Fair Plan Act, 40 P.S. § 1600.204, requires that if a property is not insurable, Fair Plan "shall promptly supply to the applicant a written statement setting forth the features or conditions of the property which prevent it from constituting an insurable risk and the measures, if any, which if taken would make the property an insurable risk." Pursuant to Section 202(9) of the Fair Plan Act, 40 P.S.

those contained in the Fair Plan Act." *Id.* Mr. Smolinski also testified that Fair Plan's processes differ from the voluntary market. *See* N.T. at 71. Because Fair Plan has its own cancellation provision, Act 205 is not applicable, and Richardson's references thereto in his amended brief will be disregarded in lieu of Fair Plan procedures.

§ 1600.202(9), written notice of cancellation must be given to the policy holder at least 20 days prior to cancellation.

Fair Plan's written underwriting standards state, in relevant part, that

> properties insured in the FAIR Plan must meet the Plan's reasonable underwriting standards.... Properties must be reasonably well maintained.... A physical inspection of a property may show the existence of condition which will cause the Plan to decline coverage on the risk.... Some conditions ... are inherently hazardous. Other conditions ... are indicative of poor maintenance and neglect....
>
> If there is a policy in force in the FAIR Plan and one or more of these types of conditions are found to exist, the Plan may, at its discretion, allow a period of time for the correction of the condition(s). Failure to notify the Plan in writing within that period of time of the condition(s) being corrected could result in policy cancellation.

N.T., Ex. F–4.

The facts in this case are undisputed. Richardson's property was insured immediately by Fair Plan, subject to inspection. Because the inspection revealed a partially-collapsed rear porch roof, Richardson was notified that Fair Plan would not continue coverage unless he corrected the problem and supplied Fair Plan with evidence of the correction before October 12, 2010. When Fair Plan did not receive a response from Richardson, it issued a notice cancelling his policy effective November 27, 2010. The policy was cancelled.

At the hearing, Richardson testified that after receiving either the notice of declination, or the notice of cancellation (he could not recall which one), he called the toll-free number on the notice of declination, spoke with Ms. Michaels, and told her that he was unable to fix the porch due to cost, his physical disabilities, and the ongoing criminal investigation, and he needed an extension. He said he called "quite a few times" in October. N.T. at 39. He also testified that he wrote Ms. Michaels a letter seeking an extension until spring of 2011 to make the repairs. However, the record evidence demonstrates that Richardson only made contact with Fair Plan after the October 22, 2010 cancellation notice was issued. *See* N.T. at 79–80.

Although he claims to have called Fair Plan's toll-free number listed on the notice of declination, Richardson said he spoke to Ms. Michaels. Ms. Michaels works for BCS, not Fair Plan.[11] In addition, the only written evidence of Richardson's contact with Ms. Michaels is her November 15, 2010 letter to Fair Plan, which indicates that Richardson was challenging Fair Plan's October 22, 2010 notice of cancellation, and then her November 22, 2010 letter to him affirming the cancellation. Finally, although Richardson testified that, at some point, Ms. Michaels transferred him to Mr. Smolinski at the Fair Plan office, Mr. Smolinski testified that the only conversation he had with Richardson occurred on January 11, 2011, which was well after the October 12, 2010 deadline. Thus, despite Richardson's claims that he contacted Fair Plan, the record does not reflect that he did so before October 12, 2010. As a result, Richardson was given notice required by the Fair Plan Act, and then his policy was cancelled. Based upon these facts, the Department did not err by affirming Fair Plan's cancellation of Richardson's policy.

■ We also disagree with Richardson's claim that the Department violated his civ-

11. Ms. Michaels' November 15 and 22, 2010 letters make clear that Fair Plan was a separate entity.

il rights by refusing to accept all of the evidence he presented in support of his case. Richardson testified that he was told by Ms. Michaels to bring all of his claim information to the hearing, including information related to the December 24, 2010 fire. The hearing officer declined to admit any evidence related to the fire, since the Department is without authority to make any claim determinations. The hearing officer explained to Richardson that the fire claim would have to be pursued in another forum, once the Department made a coverage determination.

"Proceedings before the [Department] are governed by the General Rules of Administrative Practice and Procedure...." *Park v. Chronister*, 151 Pa.Cmwlth. 562, 617 A.2d 863, 868 (1992). Section 35.162 of the General Rules of Administrative Practice and Procedure, 1 Pa.Code § 35.162, states in pertinent part: "The presiding officer ... shall rule on the admissibility of evidence, and shall otherwise control the reception of evidence so as to confine it to the issues in the proceeding." Because the sole issue before the Department was whether Fair Plan's cancellation of Richardson's policy violated the Fair Plan Act and its applicable rules and procedures, the hearing officer properly refused to admit evidence related to the December 24, 2010 fire and any claims resulting therefrom. Thus, Richardson's rights were not violated by the Department's failure to accept all of his evidence.

Based on the foregoing, the Department's order is affirmed.

### ORDER

AND NOW, this 12th day of September, 2012, the Pennsylvania Insurance Department's March 17, 2011 order is affirmed.