IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nelson Hess,                                    :
                            Petitioner          :
                                                :
            v.                                  :  No.  1155 C.D. 2020
                                                :  Submitted:  June 6, 2023
Pennsylvania Public Utility                     :
Commission,                                     :
                            Respondent          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED:  July 14, 2023


        Nelson Hess (Hess), pro se, petitions for review of the order of the
Pennsylvania Public Utility Commission (PUC) denying Hess's exceptions to an
administrative law judge's (ALJ) Initial Decision, which dismissed Hess's Formal
Complaint on the basis that Hess failed to prove by a preponderance of the evidence
that installation of a smart meter at his residence constituted unsafe or unreasonable
service under Section 1501 of the Public Utility Code[1] (Code), 66 Pa.C.S. § 1501,[2]
or that PPL Electric Utilities Corporation (PPL) violated any other provision of the

---

[1]  66 Pa.C.S. §§ 101-3316.
[2]  Section 1501 of the Code requires public utilities to "furnish and maintain adequate, efficient,
safe, and reasonable service and facilities" to their customers.  66 Pa.C.S. § 1501.

Code, a PUC order or regulation, or a PUC-approved tariff. Hess also petitions for review of the PUC's subsequent order denying his petition for rehearing and reconsideration. Upon review, we affirm.

## I. Background and Procedural History

In 2008, the General Assembly enacted Act 129,[3] which, in relevant part, directed electric distribution companies (EDC) in Pennsylvania to "furnish smart meter technology . . . [i]n accordance with a depreciation schedule not to exceed 15 years." 66 Pa.C.S. § 2807(f)(2)(iii). In June 2014, PPL filed a Smart Meter Plan with the PUC to comply with the requirements of Act 129, in which PPL outlined its plans to install Radio Frequency Mesh meters (smart meters) on all of its customers' lines. Reproduced Record (R.R.) at 8.[4]

Hess owns a residence in Schuylkill County, Pennsylvania. R.R. at 5. PPL, as Hess's EDC, notified Hess it would be replacing Hess's meter with a smart meter. *Id.* On July 6, 2018, Hess filed a Formal Complaint with the PUC requesting that the PUC prohibit PPL from installing a smart meter at his residence. *Id*. at 3-4. In his Formal Complaint, Hess alleged he gets headaches when he is at his sister's home, which has a smart meter. *Id.* at 87. Through his initial Formal Complaint and the two amendments that followed, Hess averred that the installation of a smart meter would harm his health, safety, and privacy. *Id.*

ALJ Elizabeth H. Barnes ultimately conducted an evidentiary hearing on Hess's Second Amended Complaint on May 14, 2019. R.R. at 3-4. Hess appeared pro se and presented two exhibits. *Id.* at 4. The first was an article regarding the effects of smart meters. *Id.* The second was a printout of an internet article regarding

---

[3] Act of October 15, 2008, P.L. 1592, No. 129.
[4] Because Hess failed to paginate the Reproduced Record, we use the pagination from the electronically-stored version of his Reproduced Record.

2

cybersecurity. *Id.* PPL was represented by counsel and presented 4 written statements, 15 exhibits, and 4 witnesses, including Christopher Davis, Ph.D. (Dr. Davis) and Mark Israel, M.D. (Dr. Israel). *Id.* at 4-5.

Dr. Davis has a Ph.D. in physics, is a full-time university professor, and actively conducts scientific research on radio frequency fields, including the type produced by PPL's smart meters. R.R. at 7. Dr. Israel is a Harvard-trained, board-certified medical doctor, a professor, and the Executive Director of the Israel Cancer Research Fund in New York City.[5] *Id.* at 9. Dr. Israel has conducted extensive medical research in biochemistry, cellular biology, cancer, molecular biology, and molecular genetics. *Id.* Dr. Davis and Dr. Israel both opined that the radio frequency fields PPL's smart meter devices emit are not harmful to one's health. *Id.* at 7-11.

In dismissing Hess's Second Amended Complaint, ALJ Barnes determined there is no provision in the Code to allow a customer to opt out from the installation of a smart meter, rendering the relief Hess requested outside the PUC's authority and jurisdiction. R.R. at 15. With regard to Hess's health and safety concerns, ALJ Barnes determined Hess did "not establish a *prima facie* case to show that any [radio frequency] exposure levels from the [smart] meter will cause adverse health effects." *Id.* at 18. In doing so, ALJ Barnes noted Hess did not support his assertions his health would deteriorate if PPL installed a smart meter at his residence with any competent medical evidence. *Id.* at 19. In addition, ALJ Barnes noted PPL's expert witnesses thoroughly refuted Hess's assertions. *Id.* at 19-22. ALJ Barnes also found Hess did not provide evidentiary support for his data privacy concerns, whereas PPL provided substantial evidence to refute those concerns. *Id.* at 22-23.

---

[5] The Israel Cancer Research Fund is an international charitable fund for medical and scientific research programs. R.R. at 9.

Hess filed exceptions to the ALJ's Initial Decision with the PUC, raising numerous allegations of error. *See* R.R. at 29-41. By order dated December 19, 2019, the PUC denied Hess's exceptions. *See id.* at 44-78. Thereafter, Hess filed a request for rehearing and reconsideration with the PUC, asserting he had new evidence in the form of scientific studies and that new events occurred since the close of the record, in that he suffered a stroke, which he claims was caused by exposure to a smart meter at a relative's residence. *Id.* at 80-83.

By Order dated October 8, 2020, the PUC denied Hess's request for rehearing and reconsideration. R.R. at 86. The PUC noted a petition for reconsideration must "raise 'new and novel arguments' not previously heard or considerations which appear to have been overlooked or not addressed by the Commission." *Id.* at 90 (citing *Duick v. Pa. Gas & Water Co.*, 56 Pa. P.U.C. 553, 559 (1982)). The PUC also noted "a petition for rehearing under Subsection 703(f) of the Code, 66 Pa.C.S. § 703(f), must allege newly discovered evidence not discoverable through the exercise of due diligence prior to the close of the record." R.R. at 90 (citing *Duick*, 56 Pa. P.U.C. at 558).

In denying Hess's requests for rehearing and reconsideration, the PUC concluded Hess's allegedly new evidence "was discoverable and thus available to [Hess] prior to the close of the record," and that the arguments Hess presented were simply repetitions of the health, safety, and privacy concerns he raised in his Second Amended Complaint. R.R. at 95, 98-100. The PUC also concluded Hess failed to allege he possessed competent evidence, in the form of an expert opinion, to establish a causal connection between his stroke and exposure to radio frequency fields. *Id.* at 97.

4

Hess then filed a Petition for Review[6] in this court, arguing that: (1) the PUC incorrectly interpreted Act 129 as a mandate to universal deployment of smart meters, (2) the installation of a smart meter would endanger his health, (3) the installation of a smart meter would violate his personal privacy rights, (4) the PUC erred in accepting the biased opinions of Dr. Davis and Dr. Israel, (5) he did not have an adequate opportunity to provide scientific studies before his hearing in May 2019 due to his health issues at the time, and (6) the PUC improperly denied his request for a rehearing. *See* Petition for Review at 2-4.

On March 22, 2021, this Court issued an order staying this matter while the Pennsylvania Supreme Court considered a pending appeal of this Court's opinion in *Povacz v. Pennsylvania Public Utility Commission*, 241 A.3d 481 (Pa. Cmwlth. 2020) (*Povacz I*), *aff'd in part, rev'd in part*, 280 A.3d 975 (Pa. 2022) (*Povacz II*). The petitioner in that pending appeal raised similar arguments as Hess in opposition to the installation of a smart meter at her residence. On August 16, 2022, the Pennsylvania Supreme Court issued *Povacz II*. In *Povacz II*, the Pennsylvania Supreme Court stated

> we conclude that Act 129 does mandate that EDCs furnish smart meters to all electric customers within an electric distribution service area and does not provide electric customers the ability to opt out of having a smart meter installed. An electric customer with concerns about smart meters may seek an accommodation from the PUC or EDC, but to obtain one the customer must establish by a preponderance of the

---

[6] This Court received a letter from Hess on October 14, 2020, stating he wished to appeal the PUC's October 8, 2020 order. This Court responded by notifying Hess he needed to file a petition for review that complied with the Pennsylvania Rules of Appellate Procedure and pay the appropriate filing fee. Hess then filed an acceptable Petition for Review and paid his filing fee within the time this Court allotted. All references in this memorandum opinion to Hess's Petition for Review refer to his second filing rather than his initial letter indicating his desire to appeal.

evidence that installation of a smart meter violates Section 1501 [of the Code].

*Povacz II*, 280 A.3d at 983-84 (footnote omitted). The Court noted that "[t]o establish a claim by a preponderance of the evidence means to offer evidence that outweighs or is more convincing than, by even the smallest amount, the probative value of the evidence presented by the opposing party." *Id.* at 999 n.25.

In this specific context, the Court explained

[t]he preponderance burden requires a customer to prove that a service or facility is — more likely than not — the cause of the problem described in their complaint. *See Popowsky v. Pa. Pub. Util. Comm'n*, . . . 937 A.2d 1040, 1055 n.18 ([Pa.] 2007) ("This Court has characterized a preponderance of the evidence as tantamount to a 'more likely than not' inquiry[.]"). Specific to smart meters and [radio frequency] emissions, the burden is two-fold. First, a customer must present expert opinion rendered to a reasonable degree of scientific certainty that smart meters emit [radio frequencies] and that [radio frequency] emissions cause adverse health effects and, second, expert opinion rendered to a reasonable degree of medical certainty that [radio frequency] emissions from the smart meters, either alone or cumulative to other sources of [radio frequency] emissions, caused them harm.

*Id.* at 1006.

On November 1, 2022, this Court lifted its stay in this matter and directed the parties to file briefs. Hess filed his brief, in which he raised the following four questions for our review:

1. Has [PPL] conducted tests and provided evidence to prove that pulse modulated radiofrequency radiation transmitted by their [sic] . . . smart meter is safe?
Answer: No.

2. Was the Federal Communications Commission (FCC) able to provide acceptable evidence to U.S. District Court of the Washington DC circuit in *Environmental Health ETAL v FCC* (2021) that FCC's

non-thermal radiofrequency radiation guidelines are adequately protective of public health?
Answer: No.

3.      Do thousands upon thousands of scientific studies report adverse health effects from non-thermal radiofrequency radiation, the same type transmitted by PPL's . . . smart meters?
Answer: Yes

4.      Are PPLs customers being injured and made to suffer from radiofrequency radiation transmitted by the PPL smart meter?
Answer: Yes

Petitioner's Br. at 4.

## II.      Analysis

In reviewing an order of the PUC, we are limited to determining whether substantial evidence supports the PUC's findings of fact or whether the PUC committed an error of law, violated a party's constitutional rights, or violated its own procedures. *Popowsky v. Pa. Pub. Util. Comm'n*, 910 A.2d 38, 48 (Pa. 2006). Substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. More is required than a mere trace of evidence or a suspicion of the existence of a fact sought to be established." *Povacz II*, 280 A.3d at 1007 (citation omitted).

Initially, we note Hess's statement of questions involved in his brief does not raise the exact issues Hess raised before the PUC. Pennsylvania Rule of Appellate Procedure 2116(a) states that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). This Court has gleaned that the issues on appeal generally relate to whether installation of a smart meter is harmful to Hess's health. To the extent Hess's statement of questions involved overlaps with the issues addressed below, we interpret the questions to be "fairly suggested thereby," and will reach the merits of

7

Hess's issues. *See e.g. Richardson v. Pa Ins. Dep't*, 54 A.3d 420, 425-29 (Pa. Cmwlth. 2012) ("when it comes to compliance with the Pennsylvania Rules of Appellate Procedure, 'this Court is generally inclined to construe pro se filings liberally'") (citation omitted).

All of Hess's questions on appeal are subsumed into a broader issue dealing with whether the installation of a smart meter is harmful to his health. Couched in our standard of review, the issue becomes whether substantial evidence exists to support the PUC's holding that Hess failed to prove by a preponderance of the evidence a conclusive causal connection between radio frequency emissions from the smart meter and adverse health effects to him from having the meter installed.

Our Supreme Court's decision in *Povacz II* establishes that Act 129 mandates smart meters for all EDC customers, and a customer carries the burden of proof before the ALJ to establish the installation of a smart meter at his or her residence would violate Section 1501 of the Code. *See Povacz II*, 280 A.3d at 1006. At the evidentiary hearing in this matter, Hess merely testified and presented two articles as exhibits. This was inadequate to carry his burden of proof, which required the presentation of specific expert testimony. *See id.*

### III. Conclusion

For the reasons set forth above, we affirm the PUC's orders.

_____
STACY WALLACE, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nelson Hess, : 
                 Petitioner : 
                 : 
        v. : No.  1155 C.D. 2020
                 : 
Pennsylvania Public Utility : 
Commission, : 
              Respondent : 

# **O R D E R**

**AND NOW**, this 14th day of July, 2023, the December 19, 2019 order of the Pennsylvania Public Utility Commission denying Nelson Hess's exceptions to the Administrative Law Judge's June 17, 2019 Initial Decision is **AFFIRMED.**  The Pennsylvania Public Utility Commission's subsequent October 8, 2020 order denying Nelson Hess's Petition for Rehearing and Reconsideration of the Pennsylvania Public Utility Commission's December 19, 2019 order is also **AFFIRMED.**

 

_____

STACY WALLACE, Judge